[No. 13897. Department Two. May 5, 1917.]

MABEL GEISSLER et al., Respondents, v. GEORGE GEISSLER et al., Appellants.[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—LIABILITY—TORTS OF HUSBAND—ACTIONS—PARTIES. The wife, as a member of the community, is a proper party defendant to an action for damages through an assault committed by the husband in taking possession of an automobile which was community property with the purpose that his act should inure to the benefit of the community.

APPEAL—REVIEW—REQUESTED INSTRUCTIONS. It is not error to refuse requested instructions which were too indefinite to be of value when applied to the facts and did not sufficiently define the acts in controversy.

DAMAGES—EXCESSIVE VERDICT—PERSONAL INJURIES. A recovery of $2,000 for injuries sustained in an assault in violently seizing plaintiff and preventing her from taking the front seat in an automobile are excessive, and should be reduced to the sum of $750, where it appears that plaintiff was not seriously injured by the acts of the defendant, and that any injuries sustained were due largely to her own negligent conduct in aggravating a condition of which she was cognizant.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered June 5, 1916, upon the verdict of a jury rendered in favor of the plaintiffs for $2,000, for personal injuries. Reversed, unless $1,250 is remitted.

O. J. Albers, Herman Allen, and W. W. Langhorne, for appellants.

C. A. Studebaker, for respondents.

[1] Reported in 164 Pac. 746.

FULLERTON, J.—This is an action for damages for personal injuries claimed to have been inflicted upon the plaintiff Mabel Geissler by the defendant George Geissler, in which recovery is sought against the community composed of George and Isabelle Geissler. Howard Geissler, who, as the husband of Mabel Geissler, joins the plaintiff, is the son of the defendants.

Howard Geissler was in possession of an automobile which he had bought from George Geissler under a conditional sale contract which, by its terms, provided that, in case of default in payment of any installment note given for the purchase price, "the vendor shall be empowered to take possession . . . with or without process of law, as vendor may elect." The purchaser being in default for the payments falling due on the tenth days of October and November, 1915, George Geissler, on November 11, called at the public garage operated by Howard and demanded payment. Howard Geissler was unable to make payment, but claimed he would be able to do so during the course of the day. George Geissler, being dissatisfied with such assurance and assuming that his contract gave him the right to repossess himself of the machine without resort to legal proceedings, started to take possession, cranking the machine for that purpose. Mabel Geissler, who was present in the garage, where she acted as bookkeeper for her husband, undertook to prevent the withdrawal of the car, and was in the act of mounting to the front seat, when George Geissler put her aside, with more or less force, in order to take the front seat himself. She immediately climbed to the rear seat, when her four-year-old daughter was handed to her, and she was carried to the home of George Geissler, where the car was placed in his private garage. She refused to vacate the car and sat there for an hour in the cold, wrapping herself in a damp lap robe. When her husband arrived with a car to take her away, she was in a fainting condition and he had to carry her from the one car to the other. She revived on the way to Howard's garage, but was in a hysteri-

cal condition. A physician was summoned, who gave her some medicine to quiet her and advised that she be taken to her home.

At the time of this incident, Mrs. Geissler was six months advanced in pregnancy. In taking her home, the car stuck in the mud at about a block and a half from her mother's home, and she was taken into a neighbor's house, from which, within a short time, she was assisted to walk to her mother's. She had pains in her back and was fearful of a miscarriage. A doctor was summoned, who discovered some rythmical contraction of the womb. He took measures to check any threatened danger of miscarriage, and ordered her to her bed for some weeks' time. No complication arose and, at the proper period, she was delivered of a healthy child. One month after the birth of the child, she began this action for damages, alleging that the force used by George Geissler in dragging her backward from the car had bruised her arms and shoulders, sprained her spine, and injured her in the region of the abdomen and womb, rendering probable the premature birth of her child; that she had been confined to her room for two months by reason of defendant's fault, and would be further confined to her room for some time; that she had suffered great physical pain and mental anguish, and would continue to suffer in like manner in the future; and asked $200 for medical attendance, $200 for household assistance, and $4,000 for her physical and mental suffering. The jury awarded $3,000, which was reduced by the trial judge to $2,000, and judgment given for the latter sum. The defendants have appealed.

The first error assigned is the overruling of defendants' demurrer to the complaint on the ground of misjoinder of parties in making the wife of George Geissler a defendant. There is no merit in this assignment. The alleged tort may have been committed by the husband alone, but it was done in taking possession of community property and with the purpose that his act should inure to the benefit of the community.

This created a community liability. *Milne v. Kane,* 64 Wash. 254, 116 Pac. 659, Ann. Cas. 1913A 318, 36 L. R. A. (N. S.) 88.

Complaint is also made of the instructions given by the court, and of the refusal to give a certain requested instruction. These we shall not notice in detail. While the instructions given were somewhat long and complicated, our study of them has convinced us that they contain nothing requiring a reversal. The requested instruction, while correct as a general statement, was too indefinite to be of value when applied to the facts; it did not sufficiently define the acts giving rise to the injuries complained of for which the appellants were or were not liable to respond in damages.

There was sufficient evidence to warrant the submission of the case to the jury, but we are clearly of the opinion it did not justify the amount of damages awarded by them. We think the size of the verdict indicates that the jury were influenced by passion and prejudice, and that the action of the trial court in reducing it did not go far enough. Conceding that undue force may have been employed by George Geissler in preventing Mrs. Geissler's entrance into the car, he would be liable only for the injuries necessarily flowing from such violence, and not for any aggravation thereof resulting from the voluntary acts of Mrs. Geissler. The evidence on the part of appellants, as appears from the testimony of Mrs. Geissler and her mother and sister, was that she had one foot on the running board and one foot on the floor of the car, when George Geissler seized her by her two arms between elbow and shoulder and jerked her backward so violently that she would have fallen if her mother had not caught her. George Geissler's testimony was that she had one foot on the floor with one hand on the door and one on the bow of the seat; that he removed her hand from the bow and brushed by her into the front seat; that Mrs. Geissler did not lose her balance. In this connection it may be observed that the alleged assault did not so far overcome her as to

hinder her entering into the rear seat as quickly as he entered the front one, and that her mother immediately passed to her a four-year-old child.

In confirmation of the appellants' testimony as to the manner of handling her, she further testified that, a couple of days later, she discovered black and blue marks on her arms where she had been seized. But no complaint of pain in the arms was made to the doctor by whom she was examined on the day of the trouble for any possible injuries, her complaint at that time being as to her back and abdomen. The medical testimony was to the effect that it was usual for a woman in her state of pregnancy to have pains in the back, and that they were probably due to her condition, rather than to the act of pulling her out of the car. The examination by her own physician discovered one of the premonitory symptoms of miscarriage in the rythmical contraction of her womb, but nothing further. The medical experts, however, testified that this could be induced by anger and excitement. The evidence discloses that Mabel Geissler is a nervous, hysterical woman, and that she was in a state of extreme anger and hysteria due to her part in trying to prevent her father-in-law from taking the car. She knew her condition of pregnancy and the care she should take of herself; but she nevertheless attempted forcibly to prevent the removal of the car, and, failing in that, indulged in violent movement to enter the car before it could get under way. During the ride she worked herself into a state of high excitement, storming at her father-in-law. On arrival at his garage, she stubbornly sat in the car for an hour, attempting to ward off the cold by wrapping herself in a damp lap robe. In the light of the evidence, the injuries she suffered were largely due to her own condition and conduct, for which the appellants were not responsible. Her fears of miscarriage, in so far as they were occasioned by her own misconduct, are not an element of damage, and her actual sufferings were so largely the result of her own negligent conduct that they cannot be charged as

a natural sequence of the acts of appellant. The doctor summoned to attend her on her removal to her husband's garage testified that, from his observations, she could not have been seriously injured. The doctors appointed by the court to examine her prior to the trial, six months and a half after the alleged assault, found no indication of the pains she claimed to be suffering at that date.

The cause is remanded to the trial court with instructions to vacate the judgment upon the return of the remittitur herein, and if, within thirty days thereafter, the respondents shall, in writing, remit $1,250 from the judgment as rendered by the trial court, the court shall then enter judgment against the appellants for $750. Otherwise, it shall grant a new trial.

ELLIS, C. J., PARKER, and HOLCOMB, JJ., concur.

## ON MODIFICATION.

[Decided August 17, 1917.]

PER CURIAM.—In the disposition of this cause as directed in our former opinion, the court inadvertently failed to make mention of the conclusion reached with reference to costs. It was the intention of the court to allow the plaintiffs to recover their costs in the court below on both trials, in addition to the amount it was directed that the judgment should be reduced in case the respondents consented to a judgment in that sum; allowing the appellants only the costs incurred by them on the appeals to this court.

The remittitur ordered in the first opinion will therefore be modified accordingly.