[No. 13851. Department Two. October 11, 1917.]

GEORGE BICE et al., Appellants, v. JAMES BROWN et al., Respondents.[1]

DRAINS—DRAINAGE DISTRICTS—OFFICER—TORTS. Where drainage district officers committed trespasses in clearing out a ditch, not authorized by a deed granting the district an easement, they are personally liable as for torts committed in excess of their authority.

DRAINS—RIGHT OF WAY—GRANT—CONSTRUCTION. A right to pile logs and debris along the banks of a stream, to the extent of covering five acres, is not granted by a deed to a drainage district giving the right to clear out a stream and granting a right of way for a ditch over and across the lands of the grantor, with the right to go upon the lands for the purpose of constructing and maintaining such ditch, but reserving to the grantor the right to cultivate the land within such right of way in so far as the same is not occupied by the ditch and banks, and expressly confining the rights of the grantee to the space actually and necessarily used and occupied, with the right of ingress and egress.

SAME. Such deed conferred no right to permanently use more of the land than was necessary for retaining embankments, and reasonably implied only the right to temporary use for piling and burning stumps and debris.

TRESPASS—DAMAGES—MITIGATION — INSTRUCTIONS. In an action for trespass in leaving logs and debris upon land, the fact that the owner gave permission to defendants to leave cedar logs valuable for shingle bolts does not authorize an instruction to the jury to the effect that they could consider the value of logs on the land in mitigation of damages for the trespass.

APPEAL—PRESERVATION OF GROUNDS—OBJECTIONS. Error cannot be assigned upon the giving of instructions upon evidence outside

[1]Reported in 167 Pac. 1097.

the issues where no objection was made to the admission of such evidence.

Husband and Wife — Community Debts — Tort of Husband. Where officers of a drainage district exceeded their authority and committed a tort in connection with the business of the district, the act was their personal tort, and not a liability against their community property.

Appeal from a judgment of the superior court for Whatcom county, Pemberton, J., entered April 27, 1916, upon the verdict of a jury rendered in favor of the defendants, in an action for damages for trespass to property. Reversed.

*Bixby & Nightingale,* for appellants.

*Sather & Livesey,* for respondents.

Ellis, C. J.—This is an action in trespass to recover damages for depositing upon plaintiffs' land a large quantity of logs, stumps and debris and for the destruction of a bridge across California creek, in Whatcom county, which bridge gave access from one part of plaintiffs' land to another.

The facts are these: Plaintiffs are husband and wife and are the owners of eighty acres of land crossed by California creek, a stream varying in width from twenty-five to forty feet, which flows into the sea. In 1914, drainage improvement district No. 7 of Whatcom county was organized for the drainage of lands in the vicinity of this creek above plaintiffs' land. The scheme adopted contemplated the construction of ditches to drain the lands of the district, which ditches were to be discharged into the creek, the creek itself being used as the trunk ditch. Though the record does not make it entirely clear, it seems to be conceded that plaintiffs' land lies outside the district and between it and the mouth of the stream. The stream flows through timbered lands, and a large quantity of logs, fallen timber and snags had floated down and accumulated in its bed where it crosses plaintiffs' land. To carry out the drainage scheme it was necessary to clear this creek of obstructions in order to secure a free

flow of the waters collected from the district. For that pur-
pose the county, acting for the district, secured from plain-
tiffs, on December 31, 1914, a deed of easement which, so far
as here material, is as follows:

"The grantors, George Bice and Oro Bice, his wife, for and
in consideration of the sum of one dollar and other valuable
consideration in hand paid, for lands both taken and dam-
aged, and the receipt of which is hereby acknowledged, do
hereby grant bargain sell and convey unto Whatcom county
a municipal corporation and one of the legal sub-divisions of
the state of Washington, for the use and benefit of that cer-
tain drainage district known as drainage improvement dis-
trict No. seven of Whatcom county, Washington, the follow-
ing described real estate situated in said Whatcom county,
Washington, and within said drainage district as follows,
to wit:

"The right to clear out, straighten, deepen and widen and
to maintain as a drainage ditch California creek across the
west half of the northwest quarter of section 27, township 40,
north, range 1 east, W. M.

"This conveyance is made for the purpose of vesting in
the grantee a certain right of way for the drainage ditch for
said drainage improvement district No. seven, Whatcom
county, Washington, and the right is hereby granted to go
over and across any and all lands of the grantor into and
upon the said right of way for the purpose of constructing,
maintaining and operating said drainage ditch; but the right
is hereby reserved to the grantors and to their executors, ad-
ministrators and heirs-at-law to occupy and use and cultivate
the land within said right of way in so far as the same shall
not be occupied by said ditch, its banks, or embankments and
in such manner only as will not interfere with the free flow
of water through said ditch or weaken or impair said em-
bankments.

"The rights of the grantee herein are confined to the space
actually and necessarily used and occupied, with the right of
ingress thereto and egress therefrom."

Defendants James Brown and Miles Parish, two of the
supervisors of the drainage district, early in July, 1915, un-
dertook the work of clearing out the creek across plaintiffs'

land by day labor, employing a crew of five or six men and a donkey engine. The plan employed was to attach a lead block to a tree or stump and with a cable, by means of the engine, drag the logs, stumps and other debris up to the lead block, clearing the stream, both up and down from each such location, as far as the cable would reach. The engine was moved down stream from time to time and the operation repeated. The logs, stumps and debris were left in fan-shaped groups or piles on plaintiffs' land just as they were drawn up and released from the cable. Three large heaps were thus created on the north side and eight on the south side of the stream, all of them on plaintiffs' land and each, as the evidence shows, covering an area of approximately half an acre. These heaps extended from the banks to a distance of one hundred to one hundred and twenty-five feet on either side of the stream. At about the time the work was commenced, plaintiff George Bice notified Brown and Parish, the county engineer, and also the attorneys for the district, that he would not allow the heaps of logs and debris to be left upon his land, and demanded that they be removed or burned. Brown and Parish, after some temporizing, refused to remove the logs and debris, claiming the right under the deed to leave the piles on the land.

It is alleged in the complaint that defendants, as supervisors of the district, received compensation for their work to the benefit of their respective marriage communities; that their acts were tortious and were committed for the benefit of their respective community lands within the drainage district, and judgment was asked for damages in the sum of $800; $700 being for the estimated cost of removing the logs and debris, and $100 for the replacing of the bridge destroyed in the work. Defendants answered, denying the trespass and alleging, as affirmative defenses, (1) that they committed the acts complained of in their capacity as supervisors of the drainage district, hence were not liable personally, and (2) that the deed gave them authority as officers

of the district to do the acts complained of. The reply denied
that defendants were acting within the scope of their author-
ity as supervisors or within the authority conferred by the
deed. The jury returned a verdict for defendants. Motion
for new trial was made and overruled. Judgment was en-
tered in favor of defendants, and against plaintiffs for costs.
Plaintiffs appeal.

The court, by instruction, took the first affirmative defense
from the jury. So far as the record shows, no exception was
taken to this instruction. In any event, we think it correct.
If the acts complained of were not authorized by appellants'
deed to the county they clearly constituted a trespass and
were in excess of the authority of respondents as supervisors
of the district. They constituted a personal tort of respond-
ents for which they would be liable.

. The dominant question is that presented by respondents'
second affirmative defense. Did the deed give respondents
authority as officers of the district to do the acts complained
of? Upon this point appellants requested an instruction as
follows:

"Upon the question of this second affirmative defense the
court instructs you that the same is not a defense to this
action; that said right of way deed gives said district and its
officers the right to clear out the bed and banks of said creek
and to remove therefrom logs, fallen timber, stumps and other
debris which may obstruct the flow of water therein, and also
gives the right to said district and its officers to use the banks
of said creek to an extent which is necessary for the tem-
porary purpose of clearing out said creek, and under and by
virtue of said deed said defendants had the right to tem-
porarily deposit such debris upon so much of the banks of said
creek as was actually necessary for the purpose of carrying
off, cutting up, burning or otherwise removing such debris,
but said deed does not confer any right upon said drainage
district or its officers or upon these defendants to haul out
said debris beyond such narrow strip as was actually neces-
sary for the purpose above stated, nor to leave the same upon
any part of said land of plaintiffs or the banks of said creek

except for such temporary purpose, and for such reasonable time as would have enabled said defendants to burn up or remove same. You will therefore not consider said deed, as in any manner exonerating defendants from liability in this action."

The refusal of the court so to instruct is assigned as error. The assignment is well taken. The second paragraph of the deed, above quoted, gives in general terms "the right to clear out, straighten, deepen and widen and maintain as a drainage ditch California creek" across the land. The third paragraph, after granting a right of access across any and all lands of grantors for the purpose of maintaining and operating the stream as a drainage ditch, expressly reserves the right to the grantors,

"To occupy and use and cultivate the land within said right of way in so far as the same shall not be occupied by said ditch, its banks, or embankments and in such manner only as will not interfere with the free flow of water through said ditch or weaken or impair said embankments."

This reservation is wholly inconsistent with any right in the drainage district to use appellants' land or any part of it as a permanent place of deposit for logs, brush, stumps and debris taken from the creek. It contemplates the use of no more of appellants' land than is necessary for proper embankments essential to the maintenance of the creek as a drainage ditch. This view is further emphasized by the last sentence of the deed, above quoted, as follows:

"The rights of the grantees herein are confined to the space actually and necessarily used and occupied with the right of ingress thereto and egress therefrom."

Respondents invoke the familiar rule that deeds are to be most strongly construed against the grantor. That rule, however, is merely a rule of construction, and where, as here, the deed contains an express reservation inconsistent with the right claimed, that rule of construction cannot be invoked to extend the general words of grant so as to destroy or render nugatory the express reservation.

The court, construing the deed as conferring the right permanently to deposit the logs and debris upon appellants' land if no more land was occupied than was necessary for the purpose, instructed upon the theory that the action was one for negligence, and to the effect that, if the jury found that the work was performed in a reasonably careful and prudent manner, there could be no recovery even though plaintiffs were damaged. The giving of this instruction is also assigned as error. This assignment presents in another form the same question as that just discussed. The issue was not as to a negligent exercise of rights conferred by the deed, but as to a wanton exercise of rights not conferred. We are clear that the deed must be construed as conferring no right to permanently use more of the land than was necessary for retaining embankments. It gave no right to permanently deposit logs and debris upon the land. The reservation negatives any such implication. Such an implication cannot be indulged unless not to indulge it would defeat the grant, which is not the case here. Such right was not essential to the full enjoyment of the easement. The evidence shows without contradiction not only that it was perfectly feasible to pile and burn the debris, but that that course was followed in clearing the upper reaches of the stream above appellants' land. In view of the reservation in the deed, the only use of appellants' land, other than that of access to the stream, reasonably implied in the grant was the right of temporary use for piling and burning or otherwise removing the logs, stumps and debris. The instruction complained of was erroneous.

There was some evidence that appellant George Bice, while the work was in progress, expressed to some of the workmen satisfaction with the manner in which it was being done. He denied this, but admitted that he authorized them to leave any cedar logs fit for shingle bolts upon the land. Touching this evidence the court instructed to the effect that if the timber removed and placed upon higher land became more

valuable to appellants that fact should be considered in esti-
mating the damage, if the jury found that they were dam-
aged. This instruction was erroneous. There was no evi-
dence that any of the logs, save a very few cedar logs, were
of any value. As to the cedar logs, the mere fact that appel-
lant gave permission to leave them upon his land should have
been considered in mitigation of damages only to the extent
of the damage resulting from leaving such cedar logs. Their
value to appellant was wholly immaterial. There was no evi-
dence of any agreement that the cedar logs should be taken
in payment for a violation of the terms of the deed.

Touching this evidence the court further instructed to the
effect that if the logs taken from the creek were deposited at
places known to appellants and appellants agreed thereto,
they would not be entitled to damages as a result of the logs
being so placed. Respondents, in their answer, did not plead
an oral agreement that the logs and debris might be per-
manently deposited on the land, nor did they plead any such
consent as an estoppel to claim damages. In the absence of
such pleading it is obvious that this evidence and the instruc-
tion addressed thereto were outside the issues. But inas-
much as the reception of this evidence was not objected to
upon that ground, we cannot say that the court erred in giv-
ing this instruction.

Appellants complain of an instruction to the effect that, if
the jury found from the evidence that it was reasonably
necessary to destroy the bridge in order to clear the creek
of logs and debris, no damages could be awarded for its de-
struction. This was not error. The prime purpose of the
deed of easement was to permit the clearing of the stream.
If the destruction of the bridge was necessary to that pur-
pose, its destruction was within the contemplation of the
grant.

It is urged that the court erred in directing the jury to
return a verdict in favor of respondents Belle Brown and
Roxie Parish. This instruction was clearly correct. They

had no part in the commission of the tort. Whether judgment against their husbands would bind the property of the two communities is a different question. Inasmuch as no judgment was entered against any of the respondents, a decision of this question is not now imperative. But since this case must be retried and the court's instructions seem to indicate the view that no judgment binding the communities could be rendered on the cause of action stated, we deem it expedient briefly to examine the question. Respondents were not contractors. They were officers of the district, elected to manage its affairs. They committed the tort complained of in connection with the business of the district, not the business of the communities. Since they exceeded their authority the tort was their personal tort. We are clear that the case falls within the rule announced in *Brotton v. Langert,* 1 Wash. 73, 23 Pac. 688, and followed in *Day v. Henry,* 81 Wash. 61, 142 Pac. 439, rather than that stated in *Kangley v. Rogers,* 85 Wash. 250, 147 Pac. 898. In the latter case, the distinguishing elements are clearly and sufficiently noted. Neither the facts pleaded nor those developed in evidence constitute a cause of action against the communities.

Judgment reversed, and cause remanded for a new trial.

HOLCOMB, PARKER, FULLERTON, and MOUNT, JJ., concur.