[No. 19601.    Department Two.    April 23, 1926.]

# PHIL DePHILLIPS, *Appellant*, v. H. L. NESLIN *et al.*, *Respondents.*[1]

[1] HUSBAND AND WIFE (84)—COMMUNITY PROPERTY—LIABILITY FOR TORTS—SLANDER BY HUSBAND. The community is liable for slander committed by the husband and his agents in charging an employee with larceny with a view of obtaining restitution of the funds of the community, alleged to have been stolen; since it was committed in the management and for the benefit of the community property.

[2] SAME (84)—ASSAULT BY HUSBAND—LIABILITY OF COMMUNITY. The community is liable for an assault committed by the husband and his agents upon an employee, in an endeavor to coerce him to make restitution of funds which it was claimed he had stolen from the community; since it was committed in the management and for the benefit of the community property.

[3] SAME (84)—MALICIOUS PROSECUTION—LIABILITY OF COMMUNITY. The community is liable for a malicious prosecution instituted by the husband with the knowledge and acquiescence of his wife, in connection with charges against an employee in their community business, with the view of obtaining restitution of funds which it was claimed that he had stolen from the community.

[4] SAME (93)—COMMUNITY PROPERTY—PLEADING—INTEREST OF COMMUNITY. In an action against the community for slander, assault and malicious prosecution in charging an employee with stealing funds of the community, in an effort to coerce restitution by the delivery to the plaintiffs of certain specified war bonds belonging to the plaintiff, it is error to strike from the complaint reference to such war bonds; since it shows the interest of the community in committing such wrongful acts.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered August 25, 1925, upon an order sustaining demurrers to a complaint for malicious prosecution. Reversed.

*Earl W. Benson* and *John C. Hurspool,* for appellant.

*E. L. Casey* and *Evans & Watson,* for respondents.

[1]Reported in 245 Pac. 749.

PARKER, J.—The plaintiff, DePhillips, commenced this action in the superior court for Walla Walla county, seeking recovery of damages from the defendant, H. L. Neslin, and from the defendant community consisting of H. L. and Vera Neslin, upon three causes of action; the first for slander, the second for assault, and the third for malicious prosecution; all, it is claimed, growing out of one transaction and perpetrated by the defendant Neslin, while acting for himself and the community. Each of the three causes of action, as pleaded in the plaintiff's second amended complaint, was demurred to in behalf of the community upon the ground that it fails to state facts constituting a cause of action against the community. These demurrers were each sustained by the trial court; and the plaintiff electing to not plead further, judgment of dismissal was rendered in favor of the community. Thereupon, on the plaintiff's own motion, the case was dismissed as to the defendant Neslin in his separate capacity, without prejudice. Thereupon the plaintiff appealed to this court from the judgment dismissing the action as to the community.

The facts necessary to be here noticed, as alleged in the first cause of action, wherein damages are claimed against the community for slander, may be summarized as follows: The community composed of Neslin and wife at all times in question owned and operated a general clothing store in Walla Walla, it being under the direct management and control of Neslin. On May 24, 1924, and for some four years immediately prior thereto, DePhillips was employed by the community in the operation of the store. On May 20, 1924, Neslin, acting for the community, entered into a contract with the Retail Merchants Protective Association of Kansas City, by the terms of which the association was to make investigation and so-called "purchase tests" with a

view, among other things, of determining the honesty or dishonesty of the employees therein; for which the association was to be paid a "fee of $25 and fifty per cent of all recoveries made." We quote from the further allegations of this first cause of action as follows:

"That thereafter and on or about the 22nd day of May, 1924, J. D. Morton, F. I. Gunsolaus and Grace Gunsolaus, employees of the said Retail Merchants' Protective Association, in pursuance of said contract and agreement and with the knowledge and acquiescence of said H. L. Neslin and Vera Neslin, his wife, commenced an investigation of the honesty of plaintiff as such employee of defendants; that while so acting and claiming to have discovered thefts by plaintiff and for the purpose of compelling plaintiff to deliver to defendants and said employees of the Retail Merchants' Protective Association certain French War Bonds to the amount of ten thousand ($10,000.00) dollars, which to the knowledge of defendants, plaintiff then had on deposit in the Baker-Boyer National Bank of Walla Walla, Washington, in settlement of said alleged thefts by plaintiff, said agents, in the presence of said H. L. Neslin and with the approval and encouragement of H. L. Neslin and while plaintiff was engaged and performing his regular duties as clerk for defendants in the said store of said defendants, falsely accused plaintiff of retaining a portion of the purchase money received from the sale of goods and then and there threatened to have plaintiff arrested and prosecuted for such pretended thefts; that such threats and accusations were made in such a loud and boisterous manner that numerous people were attracted to the said place of business where said parties were and heard such accusations, and particularly the said J. D. Morton, F. I. Gunsolaus and Grace Gunsolaus and said defendant H. L. Neslin spoke to the police officers upon their arrival at said place in the presence and hearing of numerous bystanders the following words, to-wit: 'Take him to jail, he has been stealing money from Mr. Neslin, we have the goods on him,' 'that they had found marked money on him, that he was crooked

and to lock him up until the next day when they would prove him to be a thief,' or words to such tenor or effect, which said words were spoken of and concerning the plaintiff and were so understood to be spoken by the police officers and the bystanders, and by such statements said officers and bystanders understood the plaintiff was accused of the crime of larceny and was unfit to be employed in places of responsibility and trust and involving the receipt or handling of money or of acting as a clerk or salesman for others and that by reason thereof plaintiff has been greatly chagrined and humiliated and has been unable to secure employment in his said occupation as clerk or salesman or at all except for brief periods and under constant surveillance to his damage in the sum of $40,000.00.''

[1] We first inquire, do these allegations constitute a cause of action against the community? It is here clearly alleged that the charges, threats and demands made by the association's employees against and upon DePhillips were made in the presence of and with the approval of Neslin, and that they were made in the presence of others. The language used was clearly slanderous, since it plainly charged DePhillips with the crime of larceny. This, manifestly, was an actionable tort upon the part of Neslin. Whether or not it was an actionable tort upon the part of the community depends upon the nature of Neslin's agency for the community. It seems plain that Neslin was intending to act for the community in sanctioning the making of these charges and demands against and upon DePhillips. Neslin's purpose was clearly to recover restitution for the community for loss occasioned, as it is claimed, by the larceny of DePhillips. In *McGregor v. Johnson*, 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022, wherein there was involved the question of the community being liable for money wrongfully obtained by the husband, it was held liable because the

money was so obtained by the husband for the community. Judge Crow, speaking for the court, said:

"Assuming in the case before us that the appellant J. B. Johnson should be successful in retaining the $1,300 which he wrongfully obtained, there could be no question but that it would become the community property of himself and wife. Under our statute it certainly would not become his separate property. If we were to hold that the obligation he has wrongfully incurred to the respondent is now his separate debt, it would follow that the community, after receiving a financial benefit from his wrongful acts, could retain the same without being called to account or compelled to make restitution. Such a holding could find no support in either law or reason."

It is true the money there in question was acquired by concealment and fraud on the part of the husband, rather than by slander and threats, as attempted in this case; but had Neslin been successful in his slander, threats and demands in obtaining some of the bonds from DePhillips in restitution to the community for property claimed to have been taken from it by the larceny of DePhillips, manifestly the bonds so obtained would have become the property of the community. Therefore, how can it be said that Neslin was not acting for the community in his efforts in that behalf? In our later decision in *Geissler v. Geissler*, 96 Wash. 150, 164 Pac. 746, wherein there was involved the liability of a community for an assault committed in taking possession of property claimed to belong to the community, Judge Fullerton, speaking for the court, said:

"The alleged tort may have been committed by the husband alone, but it was done in taking possession of community property and with the purpose that his act should inure to the benefit of the community. This created a community liability. *Milne v. Kane,*

64 Wash. 254, 116 Pac. 659, Ann. Cas. 1913A 318, 36 L. R. A. (N. S.) 88.''

Our decision in *Kangley v. Rogers,* 85 Wash. 250, 147 Pac. 898, also supports this view. The controlling consideration is, was the tortious act of Neslin, the husband, committed by him in the management of the community property or for the benefit of the community? If so committed, the community must be regarded as having committed the act and thereby rendered itself liable therefor.

The facts of this case are distinguishable from negligent or wrongful acts committed by a husband in his official capacity as an elective public officer; as, we think, is rendered plain by our decisions in *Day v. Henry,* 81 Wash. 61, 142 Pac. 439, *Bice v. Brown,* 98 Wash. 416, 167 Pac. 1097, and *Kies v. Wilkinson,* 114 Wash. 89, 194 Pac. 582, 12 A. L. R. 833. The facts of this case are also distinguishable from damages resulting from the wrongful acts of a husband causing alienation of the affections of another man's wife, manifestly because such wrong could have no possible relation to the management of community property or to the benefit of the community. *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634. We conclude that the allegations of this first cause of action state cause for relief as against the community.

[2] The facts necessary to be here noticed, as alleged in the second cause of action, wherein damages are claimed against the community for assault, may be summarized as follows: The community ownership and operation of the store, the employment of DePhillips therein, and the contract with the protective association are alleged as in the first cause of action above noticed, and then it is further alleged:

''That thereafter on or about the 22nd day of May, 1924, J. D. Morton, F. I. Gunsolaus and Grace Gun-

solaus, employees and agents of the said Retail Protective Merchants' Association in pursuance of said contract and agreement, commenced an investigation of the honesty of plaintiff as such employee of defendants; that while so acting and claiming to have discovered thefts by plaintiff and for the purpose of compelling plaintiff to deliver to defendants for distribution according to the terms of said contract and agreement certain French War Bonds to the amount of $10,000.00 which to the knowledge of defendants, plaintiff had then on deposit in the Baker-Boyer National Bank, at Walla Walla, Washington, to repay such thefts, said agents in the presence of said H. L. Neslin and with his approval and acquiescence and said H. L. Neslin as well, and while plaintiff was engaged and performing his regular duties as clerk for defendants in the said store of said defendants, thereupon demanded of plaintiff that plaintiff deliver to them or defendants said War Bonds; plaintiff having refused to comply with said demand, said agents and said H. L. Neslin to coerce plaintiff to deliver to them said bonds, beat, choked and struck plaintiff and while so beating, repeatedly demanded of plaintiff that he deliver to said agents and said defendants the French War Bonds, aforesaid, and upon plaintiff's continual refusal to do as they said, continued said beating, choking and striking until plaintiff, became exhausted, bruised and weak and rendered disabled to do any work for a period of two weeks and was so exhausted, bruised and hurt that he had to summon the service of a physician and to be taken to a hospital and was compelled to remain at said hospital for six days and by reason thereof was compelled to pay the sum of $25.00 for medical services and the additional sum of $30.00 for hospital services and by reason thereof and the acts and things set forth, plaintiff has been damaged in the sum of $40,055.00."

Our discussion and review of the authorities with reference to the first cause of action, we think, are equally applicable and controlling with reference to

this assault cause of action. Plainly, the alleged assault was committed and sanctioned by Neslin as much in the attempted management of the community property and in the interest of the community property as the slander was so committed. We, therefore, conclude that the allegations of this second cause of action state cause for relief as against the community.

[3] The facts necessary to be here noticed, as alleged in the third cause of action, wherein damages are claimed against the community for malicious prosecution, may be summarized as follows: The community ownership and operation of the store, and the employment of DePhillips therein, are alleged as in the first cause of action. It is then further alleged:

"That on or about the 27th day of May, 1924, the said H. L. Neslin on behalf of the community, consisting of himself and the said Vera Neslin, his wife, *and with the knowledge and acquiescence . of said Vera Neslin,* and as a part of the transaction set up in the plaintiff's first and second amended causes of action and for the purpose therein set out and without probable cause, wantonly, unlawfully and maliciously intending to injure the plaintiff in his good name and reputation caused a complaint to be filed with the justice of the peace for the precinct and county of Walla Walla, state of Washington, before Fred M. Hedger, charging the plaintiff with the crime of petit larceny under the laws of the state of Washington, and thereupon and thereby caused a warrant of arrest to be issued from said justice court on said charge, and without probable cause, or legal grounds therefor, and were directly responsible for the conviction of said plaintiff in said court and on said charge of petit larceny. That plaintiff appealed from said conviction to the superior court in and for the county of Walla Walla, state of Washington, and that on the 16th day of. June, 1924, said cause was tried in the superior court and after duly hearing said cause, a jury duly empaneled and sworn therein,

returned a verdict finding the plaintiff herein not guilty; and the judge of the above entitled court ordered the plaintiff discharged from his recognizance and allowed his liberty and freedom.

"That on or about the 10th day of June, 1924, the said H. L. Neslin on behalf of the community, composed of himself and Vera Neslin, still intending and contriving to injure the plaintiff in his good name and reputation, and with the knowledge and acquiescence of Vera Neslin, his wife, wilfully and maliciously and without probable cause appeared before T. M. McKinney, deputy prosecuting attorney for Walla Walla County, Washington, and caused an information to be filed in the superior court of the state of Washington, in and for the county of Walla Walla, charging Phil DePhillips with the crime of petit larceny and thereby caused a warrant of arrest to be issued for the said Phil DePhillips; and that on the 10th day of June, 1924, the said Phil DePhillips furnished bonds in the sum of $250.00 and was released; and after sixty (60) days had elapsed from the date of the filing of said information and plaintiff was ready and willing during all of said time to then and there stand trial on said information, pursuant to and required by said bond, and said cause having not been brought to trial said Phil DePhillips moved for a dismissal thereof and that the judge of the above and entitled court thereupon duly signed an order of dismissal of said cause . . . *That the said H. L. Neslin acting for and on behalf of the community composed of himself and his wife, Vera Neslin, and with her knowledge and acquiescence instituted the prosecution in each instance; and that the said H. L. Neslin and Vera Neslin, in each of said prosecutions were actuated by malice and that there was want of probable cause for such prosecutions.*"

This is followed by an allegation of damage to DePhillips as the result of the alleged malicious prosecution.

It is to be noticed that the language of these allegations, which we have italicized, clearly charge Mrs.

Neslin, as well as Neslin himself, with knowledge and acquiescence in the criminal prosecutions of DePhillips, and also that they were both actuated by malice in the bringing about and carrying on of those prosecutions. This, we think, is enough to conclusively show that both Neslin and his wife, and hence the community, became liable for any damages resulting from such malicious prosecutions. We conclude that the allegations of this third cause of action state cause for relief as against the community.

[4] Upon motion directed against the first cause of action, as alleged in the second amended complaint, the court struck therefrom this language:

"And for the purpose of compelling plaintiff to deliver to defendants and said employees of the Retail Merchants' Protective Association, certain French War Bonds to the amount of ten thousand ($10,-000.00) Dollars, which to the knowledge of defendants, plaintiff then had on deposit in the Baker-Boyer National Bank of Walla Walla, Washington, in settlement of said alleged thefts by plaintiff."

This, it is contended in behalf of DePhillips, was error to his prejudice. We think this contention must be sustained. This quoted language touches directly the purpose for which Neslin was acting in committing his tortious acts against DePhillips. We think it is an appropriate allegation of a fact which DePhillips, upon the trial of the case, would be entitled to prove in support of his theory that Neslin was in fact acting in the interest of the community in committing those wrongful acts. We conclude that the striking of this allegation from the first cause of action was erroneous. For the same reason we think the trial court erred in striking substantially the same allegation from the second and third causes of action.

The judgment of the trial court rendered in favor of the community in dismissing the action is reversed, and the cause remanded to the superior court, with directions to overrule the demurrer to each cause of action, deny the motion to strike from each cause of action the allegation above noticed, and proceed in harmony with the views herein expressed.

TOLMAN, C. J., MACKINTOSH, MAIN, and MITCHELL, JJ., concur.