[No. 20944.   Department One.   March 20, 1928.]

RUTH TYLER MECK, *Respondent*, v. FRED BEECHER

CAVANAUGH *et al.*, *Appellants*.[1]

[1] HUSBAND AND WIFE (84)—COMMUNITY DEBTS—TORTS—LIABILITY
FOR ACTS AS EXECUTOR. The community property of a husband
and wife is liable to respond in damages for the negligent or
tortious acts of the husband in the discharge of duties as the
executor of a non-intervention will giving him large discretion-
ary powers looking to the profit of the estate in which the com-
munity was interested.

Appeal from a judgment of the superior court for
King county, Truax, J., entered July 11, 1927, upon
findings in favor of the plaintiff, in an action to sub-
ject community property to the lien of a judgment for
tort, rendered against the husband. Affirmed.

*Karr & Gregory*, for appellant.

*Murphy & Kumm*, for respondent.

PARKER, J.—The plaintiff, Mrs. Meck, sought a de-
cree establishing title to a tract of land situated in
King county in the defendant Fred B. Cavanaugh, Sr.,
or in the community composed of him and his wife, the
defendant Edith; the record title to the land being in
the name of Fred B. Cavanaugh, Jr., to the end that
the land be subjected to the lien of a money judgment
rendered by the superior court for King county in
favor of Mrs. Meck and against Cavanaugh, Sr.,
claimed by Mrs. Meck to evidence a community obliga-
tion of Cavanaugh, Sr., and his wife Edith. The relief
sought by Mrs. Meck was rested upon the theory that
Cavanaugh, Jr., acquired title to the land in trust for
Cavanaugh, Sr., or the community consisting of him
and his wife, he or they furnishing the money with

[1]Reported in 265 Pac. 178.

which Cavanaugh, Jr., so acquired title to the land, and all of them acquiescing in his so acquiring title with intent to avoid the land being subjected to the lien of the judgment.

The case proceeded to trial in the superior court for King county and resulted in findings and decree awarding to Mrs. Meck relief as prayed for, to the extent of adjudicating a 11/16ths interest in the land subject to the lien of the judgment, that being the proportion of the purchase price of the land furnished by the community composed of Cavanaugh, Sr., and wife; the court ruling, in substance, that to that extent Cavanaugh, Jr., held title to the land in trust for the community composed of Cavanaugh, Sr., and wife. From this disposition of the case in the superior court, the defendants Cavanaugh, Sr., and wife have appealed to this court, challenging the decree, particularly in so far as it adjudicates the judgment to be their community obligation rather than the separate obligation of Cavanaugh, Sr., and contending, therefore, that their community interest in the land is not subject to the lien of the judgment.

The controlling facts, which, we think, are not subject to serious dispute, may be summarized as follows: In 1902, appellants Cavanaugh, Sr., and Edith, his wife, were married, and have maintained their marital relation ever since then. In 1910, Mary Ann Cavanaugh, the grandmother of the respondent, Mrs. Meck, made her last will and testament, devising to Mrs. Meck and others certain undivided interests in her real property, and naming Cavanaugh, Sr., executor and trustee, with two others, to hold and manage the property in trust for Mrs. Meck and the other devisees, for a period of ten years following the probate of her will. In April, 1912, Mary Ann Cavanaugh died. Thereafter in that month her will was duly proven

and admitted to probate in the superior court for King county. The will gave to them, as executors and trustees, large discretionary powers in the management of the property, including the power of sale looking to the profitable management and ultimate division of the property or its proceeds "without the intervention of any court." Upon the expiration of the ten-year trust period a controversy arose between Mrs. Meck and Cavanaugh, Sr., over the accounting by him and his co-trustees for her interest in the property or its proceeds. In June, 1923, that controversy culminated in an action being commenced by her in the superior court for King county seeking an accounting by Cavanaugh, Sr., and his co-trustees for her interest in the property, more particularly its proceeds, assuming that the property had been disposed of. On July 27, 1925, the superior court rendered a money judgment in that action in favor of Mrs. Meck and against Cavanaugh, Sr., and his co-trustees, and each of them, and denied them compensation for their services because of their "negligence and want of care exercised by each of them in handling the affairs of the said trust." Thereupon Cavanaugh, Sr., and his co-trustees appealed from that judgment to this court, and thereafter Mrs. Meck also appealed from that judgment to this court. On September 2, 1925, Cavanaugh, Jr., acquired title to the property here in question in the manner we have already noticed, acquiring a 11/16ths interest therein in trust for the community consisting of Cavanaugh, Sr., and his wife. On January 8, 1927, this court rendered its decision upon the appeal from the judgment rendered by the superior court, awarding to Mrs. Meck, as against Cavanaugh, Sr., and his co-trustees, a substantially larger amount than had been awarded to her by the superior court. The decision so rendered by this court is reported in *Meck v.*

*Behrens,* 141 Wash. 676, 252 Pac. 91. On February 15, 1927, upon the remittitur going down to the superior court, that court entered judgment accordingly. That judgment remains unsatisfied to the extent of more than $6,000. Cavanaugh, Sr., and his co-trustees assumed and entered upon the duties of their trust with the expectation of being compensated for their services. They repeatedly claimed such compensation, and Cavanaugh, Sr., actually received some payments from the trust funds as compensation for his services. On February 27, 1927, this action was commenced in the superior court, resulting in the decree which is now before us upon this appeal.

[1] The contention here made in behalf of appellants, as we understand their counsel, is, in substance, that the services to be rendered, and which were rendered, by Cavanaugh, Sr., as executor and trustee, in behalf of Mrs. Meck and other devisees, were of that strictly official character which precludes such services being rendered by the community composed of himself and wife or by him as the representative of the community. There is invoked in support of this contention the following decisions of this court: *Brotton v. Langert,* 1 Wash. 73, 23 Pac. 688; *Day v. Henry,* 81 Wash. 61, 142 Pac. 439; *Bice v. Brown,* 98 Wash. 416, 167 Pac. 1097; *Kies v. Wilkinson,* 114 Wash. 89, 194 Pac. 582, 12 A. L. R. 833; *Fidelity & Deposit Co. of Maryland v. Clark,* 144 Wash. 520, 258 Pac. 35. Each of those decisions held a community not liable for the tortious or negligent acts of the husband member of the community, committed while he held the public office of constable, sheriff, drainage district supervisor, or county clerk, incident to the performance of his public duty in one or the other of those offices. In *Kangley v. Rogers,* 85 Wash. 250, 147 Pac. 898, it was held that the rule of those decisions as had thereto-

fore been announced in *Day v. Henry,* 81 Wash. 61, 142
Pac. 439, did not apply to tortious or negligent acts of
a notary public performed incident to his authority,
and that for such acts the community of which he was
a member would be liable in damages. This has been
recognized as the law in the later cases of *Bice v.
Brown,* 98 Wash. 416, 167 Pac. 1097, and *Fidelity &
Deposit Co. of Maryland v. Clark,* 144 Wash. 520, 258
Pac. 35. Clearly, we think, the duties of an executor
or trustee, such as is here involved, are of even a less
public nature than the duties of a notary public. Their
duties are, in a sense, of a private nature, in that they
are to be performed only for a special group; that is,
for those who are interested in the particular estate
or trust property rather than for all who may seek
their services. We have repeatedly held that employ-
ment of the husband member of a community looking
to the earning by him of compensation, and the under-
taking by him of any business transaction or venture
apart from his separate property looking to the making
of profit, is employment or business in the interest of
the community, in so far as such employment or busi-
ness looks to the making of profit, and that for tortious
or negligent acts committed by him in such employment
or business, if damage result therefrom to third
parties, the community becomes liable therefor. *Ore-
gon Improvement Co. v. Sagmeister,* 4 Wash. 710, 30
Pac. 1058, 19 L. R. A. 233; *McGregor v. Johnson,* 58
Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022;
*Milne v. Kane,* 64 Wash. 254, 116 Pac. 659, Ann Cas.
1913A 318, 36 L. R. A. (N. S.) 88; *Woste v. Rugge,* 68
Wash. 90, 122 Pac. 988; *Way v. Lyric Theater Co.,*
79 Wash. 275, 140 Pac. 320; *Geissler v. Geissler,* 96
Wash. 150, 164 Pac. 746; *Henrickson v. Smith,* 111
Wash. 82, 189 Pac. 550; *Henning v. Anderson,* 121

Wash. 53, 207 Pac. 1048; *DePhillips v. Neslin,* 139 Wash. 51, 245 Pac. 749.

The decree is affirmed.

MACKINTOSH, C. J., TOLMAN, and MITCHELL, JJ., concur.