[No. 26388. Department One. December 28, 1936.]

LARRY MILROY, *Respondent*, v. ANNA MOVIC *et al.,*
*Appellants.*[1]

[1]Reported in 63 P. (2d) 496.

*O. M. Nelson,* for appellants.

*W. H. Abel,* for respondent.

GERAGHTY, J.—On December 11, 1920, the defendants, Anna Movic and James Movic, husband and wife, executed and delivered to the plaintiff, Larry Milroy, their promissory note for one thousand dollars, payable on or before two years after date, with interest at the rate of eight per cent per annum. Payment of the note was secured by a mortgage executed by the defendants on two parcels of property in or near the city of Montesano, in Grays Harbor county. The defendants, married in 1908, lived for many years upon one of the parcels, referred to in the record as the home property.

On November 13, 1935, the present action was instituted by the plaintiff to recover upon the note and foreclose the mortgage. After setting up the instruments sued on, the complaint alleged:

"Defendants duly paid interest upon said mortgage debt, up to July 14, 1926, since which date the defendants paid, in December, 1926, the sum of $40; in December, 1929, the sum of $80; which paid the interest thereon up to January 14, 1928, leaving due, owing and unpaid, the principal sum of $1,000., together with interest thereon from said date, to-wit: January 14, 1928, at the rate of eight per cent per annum."

It will be seen that the statute of limitations had run against the note when the suit was brought, unless the payment alleged to have been made in December, 1929, was in fact made by the defendants.

The defendants filed separate answers. In his answer, James Movic admitted the execution of the note and mortgage but denied the payment of eighty dollars in December, 1929, or the payment of any sum subsequent to December, 1926. Anna Movic, in her answer, made a general denial, and affirmatively alleged that the property covered by the mortgage was at all times her separate property; that she had executed the note and mortgage to secure a debt incurred by her husband and not otherwise; that she had made no payments on the note and mortgage since their execution and had received no consideration for them. The affirmative matter contained in the answers was denied by the plaintiff.

The trial court made a general finding that,

"December 23rd, 1929, defendants paid $80 upon the note and mortgage sued on in the first cause of action herein, leaving due, owing and unpaid, the principal sum of $1,000 together with interest thereon from January 14, 1928, at the rate of 8% per annum, to secure which sums, the plaintiff has a valid first mortgage upon the lands described in the first cause of action herein."

A decree was accordingly entered awarding the plaintiff judgment as prayed for, and directing foreclosure of the mortgaged property.

 The first inquiry is whether the alleged payment of eighty dollars in December, 1929, was in fact made. We are of the opinion that the evidence preponderates in favor of the court's finding. The respondent testified that the sum was paid to him in currency through the manager of the Safeway store at Montesano, after repeated demands and a promise by James Movic to leave some money with the manager of the Safeway store for him. The manager himself testified:

"A. When I first met Mr. Milroy he was working up on the Canal, he was out of the county a good deal, but he would come down here to be with his mother, and he used to buy some things at the store. I didn't know him very well, but through his coming in there I knew him. In the early winter Mr. Milroy—still I didn't know him very well—came in there one Saturday night and demanded that Mr. Movic had left some money there for him; and I didn't have it. The following Saturday night he came in again and was very insistent that the money was there, and I was kind of indignant and I was going to sit down on him. . . . he said Mr. Movic was going to leave for him; he said that he asked him to leave it there; and I told him I didn't have it there. Finally, he came in and had the money with him. Q. Who? A. Mr. Movic. . . . Q. How much money was it? A. I do not remember the exact amount. Q. But it was a considerable sum of money? A. Yes, sir. He handed me the money in a package and said he wanted to leave it for Mr. Milroy. Q. Was it in bills? A. Yes, sir. Q. You say that was in the early winter of 1929? A. Yes, sir. Q. Are there any other circumstances about it other than what you have just told? A. No, I do not know that there are. I remember that it was near Christmas."

The payment was denied by Movic, who testified that he knew he did not make the payment in currency because he always paid by check. Mrs. Movic corroborated her husband by detailing the method in which they did business and paid their bills by check, her testimony implying that the husband could not have paid, because he had withdrawn no money from his bank.

In announcing its decision, the court stressed the character and credibility of the store manager, whose disinterested testimony he felt constrained to believe. Accepting the court's finding that the payment tolling the statute was made, the next question calling for solution is: What was its effect on the wife's

liability? There can be no question that the note was a community obligation; and, being so, the payment made by the husband, manager of the community property, tolled the statute of limitations as to the community, under the rule annuonced in *Catlin v. Mills,* 140 Wash. 1, 247 Pac. 1013, 47 A. L. R. 545, where we said:

"Under our law (Rem. Comp. Stat., §§ 6892, 6893) [P. C. §§ 1433, 1434], the husband has the management and control of the community personal property and of the community real property, except that he cannot sell, convey or encumber real property without the wife joining him. He is the community agent. *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Stevens v. Naches State Bank,* 136 Wash. 137, 238 Pac. 918; *DePhillips v. Neslin,* 139 Wash. 51, 245 Pac. 749; *Blouen v. Quimpere Canning Co.,* 139 Wash. 436, 247 Pac. 940. A husband's acts done for the benefit of the community are binding upon the community, and it would seem that, when James L. Mills made payments upon a community obligation, he was acting for its benefit and in its behalf, and that therefore those payments started the statute of limitations running anew against the community and that the community was bound thereby."

But, in her affirmative answer, the appellant Anna Movic alleged and, at the trial, sought to sustain the contention that the property covered by the mortgage was her separate estate; and that, as to such estate, a payment by the husband would not suspend the operation of the statute, under the general rule that payment by one joint debtor does not suspend the statute in the case of another not authorizing or consenting to the payment.

The court made no specific finding as to the status of the property, possibly because the broad finding that the payment was made by both parties obviated the necessity for a particular finding. Assuming the prop-

erty to be separate, if the payment was made by the husband under circumstances implying the consent or authorization of the wife, she would be bound as much as if made directly by herself, since the husband would, in that case, be acting as the wife's agent.

"While in most of the States a part payment made by one joint debtor will not suspend or remove the statute bar as to the others, yet, even where the statute provides that an acknowledgment or part payment made by one joint debtor shall not remove the statute bar as to the others, it is held where such part payment is made by the direction or at the request of the others, they are all equally bound thereby, as in such case the one making the payment acts as the agent of the others." 2 Wood on Limitations (4th ed.), p. 1483, § 288.

"In every jurisdiction if one co-debtor has actual authority to pay or promise on behalf of all, all will be bound. Therefore payment by one joint debtor at the request or by direction of another revives the Statute as to the latter; and not only actual authority from his co-debtors at the time the new promise is made by one will bind all, but a semblance of authority for which the co-debtors are responsible is certainly sufficient if the new promise is made before the debt is barred." 2 Williston on Contracts (Rev. ed.), p. 1026.

In *Coleman v. Ward,* 85 Wis. 328, 55 N. W. 695, cited in support of the above texts, the rule is thus stated:

"It seems that if a joint debtor, on being called on for payment, refers the person calling on him to his codebtor for payment, this amounts to a direction to the latter to make payment for him, and if he does so the payment will be held to continue the debt from that date as to both."

In a note subjoined to *Langlie v. Loge* (59 N. D. 399, 230 N. W. 211), 71 A. L. R. 373, the editor says on page 399:

"It appears to be held generally that if one joint debtor knows and consents to a payment by another

joint debtor, or directs or requests another joint debtor to make a payment, or ratifies such payment, that will interrupt the running of the Statute of Limitations as to him."

Numerous cases sustaining the text are cited.

We think the record sustains the view evidently entertained by the trial court, that the payment was made with the consent and authorization of the wife.

On direct examination, the respondent testified:

"Q. State whether or not during the summer of 1929, you called upon Mrs. Movic? A. Yes, Q. About payments on this note? A. Yes, I did. Q. And mortgage? A. Yes. Q. What did she tell you? A. She told me that her husband would take care of the payments, which he did. Q. You fix that in the summer of 1929? A. Yes, sir. Q. How did James Movic take care of the payment of $80.00 made in December, 1929? A. He took care of it through the Skagg's man [Safeway manager]."

While Mrs. Movic testified at the trial, she did not contradict the respondent's testimony. Also, on cross-examination, she testified that she had never disputed the mortgage and, in 1933, had accompanied the respondent to Elma to interview a Mr. McBride in relation to a loan on the property for the purpose of paying the respondent's indebtedness; that, at that time, she was not disputing the mortgage and never did dispute it, but always expected that sometime or other they would settle up, but in their circumstances at the time they could not. Asked if she now recognized and admitted the mortgage upon the land, she answered, "Well, I figured this way: That he had a thousand dollars invested and there would be some way to pay that account, the money back."

While these subsequent transactions and admissions might not, of themselves, toll the statute, they strongly

tend to support the view that Mrs. Movic authorized her husband to make the disputed payment in 1929.

In view of what we have said, a decision on the status of the mortgaged property, whether community or separate, is not necessary.

■ While the judgment correctly awarded the respondent recovery for the sum of one thousand dollars, together with interest thereon from January 14, 1928, at the rate of eight per cent per annum, an obvious error occurred in stating the amount of interest in figures as eight hundred twenty dollars. The correct figure is one hundred sixty dollars less than this amount. The court's attention was called to this discrepancy, and a waiver of the excess filed by the respondent here and in the superior court.

The judgment is affirmed upon the understanding that interest is to be correctly computed, in accordance with the formula embodied in the decree, that is to say, at the rate of eight per cent per annum from January 14, 1928. The correction of the obvious error will not affect the assessment of costs, which are to be paid by the appellants.

MILLARD, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.