[Civil No. 3126. Filed January 26, 1932.]

[7 Pac. (2d) 258.]

JOHN SELASTER and MAE SELASTER, Appellants, v. RAYMOND SIMMONS, Appellee.

Mr. William H. Westover, for Appellants.

Mr. J. Fred Hoover, for Appellee.

ROSS, J.—This is an appeal by John Selaster and Mae Selaster, husband and wife, from a judgment against them and in favor of Raymond Simmons for damages to the latter's person and property, claimed to have been sustained in a collision between the automobiles of plaintiff and defendants through the negligence of Mae Selaster, who was at the time the driver of defendants' automobile. The plaintiff obtained a verdict and judgment for $1,126.61.

The first seven assignments question the right of plaintiff to have judgment against John Selaster, the husband. The evidence is undisputed that the automobile driven by Mae Selaster when the accident occurred was community property, and it is likewise undisputed that she was at the time looking for her husband; that she had gone to the garage in Yuma where the car had been left to be washed, got it, and was on her way to get her husband when the two cars came together. Under such circumstances, we think the community, consisting of the husband and wife, was liable for the wife's tort, and that the judgment properly ran against both of them.

The community law of this state, as construed by our decisions, is more like that of the state of Washington than any other of the community property states. *Cosper* v. *Valley Bank,* 28 Ariz. 373, 237 Pac. 175. In *La Tourette* v. *La Tourette,* 15 Ariz. 200, Ann. Cas. 1915B 70, 137 Pac. 426, we said:

"The law makes no distinction between the husband and wife in respect to the right each has in the community property. It gives the husband no higher or better title than it gives the wife. It recognizes a marital community .wherein both are equal. Its policy plainly expressed is to give the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains. . . .

"The law, in giving this power to the husband during coverture to dispose of the personal property, does not do this in recognition of any higher or superior right that he has therein, but because the law considers it expedient and necessary in business transactions affecting the personalty to have an agent of the community with power to act."

In *Milne* v. *Kane,* 64 Wash. 254, Ann. Cas. 1913A 318, 36 L. R. A. (N. S.) 88, 116 Pac. 659, it was held that the community was liable for the negligent injury of the plaintiff in the operation by the husband of an automobile for the benefit of the community,

consisting of the husband and wife. In other words, it was held that the community was the wrongdoer. The court there said:

"In this case, if the negligence of the husband's causing the injury may be held to be a tort, it was the tort of the community, because the husband was acting for the community. It is clear, we think, that if the community, consisting of the two defendants, had employed a man to drive the automobile, and the negligence of this employee had caused the injury, the community would be liable. This would follow because the employee would be the agent of the community, and for his negligence in the line of his duty the community would be liable. The fact that Mr. Kane was himself the driver, and was negligent, does not change the liability. He was one of the community, acting in the line of the business for the benefit of the community, and was as much an agent for both as an employee doing that work would have been. If the community joined in the tort, the community was liable. We are satisfied, therefore, that the negligence here, though actually committed by the husband, was the negligence of both himself and wife, because it was committed by him as agent of the community, in the line of his duty, in a business in which the community was engaged."

This rule has been referred to and approved a number of times in that state. *Woste* v. *Rugge,* 68 Wash. 90, 122 Pac. 988; *McPherson* v. *Twin Harbor Stevedoring & Tug Co.,* 139 Wash. 61, 245 Pac. 747; *Meek* v. *Cavanaugh,* 147 Wash. 153, 265 Pac. 178; *Bortle* v. *Osborne,* 155 Wash. 585, 67 A. L. R. 1152, 285 Pac. 425; *Merritt* v. *Newmark,* 155 Wash. 517, 285 Pac. 442. We cannot see that the rule should be different where the tort is committed by the wife instead of the husband. She was using the car at the time for the benefit of the community, and was its agent. If it should be conceded that under section 2175, Revised Code of 1928, the community is liable only for debts incurred by the husband, the fact still

remains that here the liability arose through the negligence of the community's agent, for which the community is responsible. If the husband had turned the automobile over to his chauffeur to do an errand for the benefit of the community, under the rule the community would have been liable for the chauffeur's negligence. Likewise, if the husband permitted, authorized or directed his wife to go on an errand for the community, the latter would be liable for negligence.

This view of the community's liability for the torts of the wife is not, as suggested by defendants, in conflict with the decision of this court in *Hageman* v. *Vanderdoes*, 15 Ariz. 312, Ann. Cas. 1915D 1197, L. R. A. 1915A 491, 138 Pac. 1053. In that case the tort of the wife, for which the husband was sought to be held was not committed in the interest or for the benefit of the community. We there said:

"The weight of authority holds that the common-law liability of the husband for the voluntary torts of the wife is abrogated, so far as concerns torts connected with her separate property, by married women's statutes, which, in general, confer upon the wife the ownership and management of her own property, free from the control of her husband, without expressly touching the subject of liability for her torts."

In *Christensen* v. *McCann*, 41 Wyo. 101, 282 Pac. 1061, a case relied upon by defendants, it is true the holding was that the husband was not liable for the negligence of his wife in operating an automobile, but the facts, as stated by the court, were as follows: "It is undisputed that the latter [Mrs. McCann] is the sole owner of the Buick coupe, that Mr. McCann had no interest whatever in it, and that he was not present when the accident happened. No phase of family purpose or agency is required to be considered," a very different state of facts from what we

have here. Besides, Wyoming is not a community law state.

In *Murray* v. *Newmyer,* 66 Colo. 459, 182 Pac. 888, it was held the husband was not liable for the negligence of his wife in operating an automobile "jointly owned by defendants." But in that state they do not have the community property law.

From our conclusion, the exception to the following instruction cannot be sustained:

"As to a point made this morning, I think if you find that the defendant May Selaster was operating the car in the community enterprise of herself and her husband, that even though the husband was not driving, not personally at the time responsible for the injury, yet he will be bound equally with the defendant May Selaster, if you find against her. That is, if you find that the proximate cause of the injury, the sole proximate cause of the injury, was her negligent operation of the automobile, you will find against the defendants jointly—that is, John Selaster and May Selaster."

This instruction correctly states the law. It is not bad for failing to define community property, or what facts would constitute a community errand or enterprise, for the reason that it was conclusively shown by the undisputed evidence that the automobile was community property, and that it was being driven by the wife at the time of the accident in the interest of the community. Granting, however, that the situation would have been clarified by definition of these phrases, it seems to us the duty of requesting such definition of the court devolved upon defendants. If they desired an amplification of the instruction given, or if they were not satisfied with its form and contents, it was up to them to submit instructions that would meet their ideas of the law. *Arizona Cotton Oil Co.* v. *Thompson,* 30 Ariz. 204, 245 Pac. 673; *Yuma National Bank* v. *Balsz,* 28 Ariz. 336, 237 Pac. 198; *Southwest Cotton Co.* v. *Clements,* 25 Ariz.

124, 213 Pac. 1005; *Southwest Cotton Co.* v. *Ryan*, 22 Ariz. 520, 199 Pac. 124.

We agree with defendants that the "family purpose doctrine" is not involved, since the question can and should be decided upon other principles of law.

Complaint is made of the failure of the court of its own motion to instruct the jury "that the liability of the defendant John Selaster depended upon the relationship of principal and agent" and the establishment that the agent was acting within the scope of her authority at the time of the accident. We think the liability of the husband results from the fact that the automobile was community property and being operated by a member of the community for the benefit of the community at the time the injury was inflicted. When these essentials concur, it follows, as a matter of law, that the driver is the agent of the community.

The next assignment is based upon the failure of the court to grant defendants' motion for a new trial on the ground of the misconduct of plaintiff's counsel, such misconduct consisting of "improper remarks and reflections against the defendants and their attorney," attempts "to get before the jury incompetent and irrelevant matters for the sole and only purpose of prejudicing the jury," and of conduct and insinuation seeking "to get before the jury the question of insurance on defendants' automobile." An inspection of the record convinces us that counsel for plaintiff in many instances did and said things not exactly proper or ethical. Defendants cite seventeen acts of misconduct committed during the trial, which they claim were harmful. Many of these consisted of statements directed at the attorney for defendants, such as he was tricky, technical, guilty of framing his questions to forewarn the witness, and the like, and others directed at defendant and witness Mae Selaster; for instance, questions implying

that she was under the influence of intoxicating liquor; that she had been told to testify to untruths; that defendants' witnesses were unfair and were not telling the truth, and the like. These side thrusts were all unnecessary and improper, and if counsel did not know it his legal and ethical training have been sadly neglected. However, all these things took place in the presence of the trial court, and upon a motion for new trial were urged upon that court. The motion was denied, and in such denial they were necessarily held not to have prejudiced defendants' rights. The supervision of trials is committed to the trial court, and in matters involving the conduct of counsel, as well as other trial matters, unless it clearly appears that some prejudice has resulted, we think we should defer to the decision and judgment of the trial court. That court had the whole picture before it and was better qualified to pass on the question, and having done so, by denial of the motion for new trial, we accept its decision and judgment.

Included in this assignment is the misconduct of plaintiff's counsel in seeking, by conduct and insinuation, to get before the jury the fact that defendants' automobile was insured. It appears that a mistrial of the case was declared, and the jury, composed of members of the regular panel, discharged just a few days before because of the misconduct of the (same) attorney for plaintiff in getting before the jury the fact that defendants' car was insured. It also appears that the jury which tried the case was composed of members from the same regular panel. It is now said by defendants that the dismissed jury was not instructed not to discuss the case with their fellow jurors, and that it is reasonably certain the last jury was informed of the insurance by the members of the first jury. This, if true, and it likely is, was well known to defendants and, notwith-

standing, they went to trial. They should have objected to going to trial before a jury of the regular panel.

But defendants say plaintiff's counsel indirectly by asking the jurors on their *voir dire* if they knew one J. J. Waddell, of Yuma (a realtor and an insurance agent), conveyed the information of insurance to the jury. Waddell does not appear to have been a witness, or party, or otherwise interested in the case. Just why the question was asked of prospective jurors is not explainable, unless it was hoped thereby to have them infer that defendants' car was insured. This oblique way of conveying the fact of insurance is just as damaging and reprehensible as when done by direct questions. The weakness of defendants' position, however, lies in the fact that it is not shown that the jurors knew Waddell was an insurance agent, and in the further fact that, if they knew of the insurance, they had probably obtained such knowledge from the members of the panel dismissed from the first trial.

Finally, defendants assert that the verdict was excessive, so much so as to evidence prejudice and passion on the part of the jury. The proof of plaintiff's outlay for medical attendance, medicine and drugs, hospital care and loss of time was definite and certain, and reasonably so for damages to plaintiff's automobile. These amounted to $462.11. Deducting this sum from the verdict of $1,126.61, we have an allowance of $664.50 for general damages to the person of plaintiff. It is of this latter sum defendants complain.

According to the testimony of the doctor who attended him, plaintiff sustained in the accident some abrasions and cuts on both legs, and the left shoulder, also multiple little bruises on his legs and left side, and complained of considerable pain in his chest. The doctor also said his wounds were painful,

and that he sent him to the hospital because he was afraid pneumonia would set in. There were no fractures. The plaintiff testified that he received a cut on his right shoulder, but that there was not so much pain there as under the other shoulder, and two cuts on each leg; that he had an awful lot of pain in the lower part of his back; that he could hardly walk for quite a while; that the pain was sharp and serious, and that the doctor gave him something at different times so that he could rest. Plaintiff, who was an employee of the Southern Pacific Company, resumed his work after twenty-three days. If he has since suffered any pain or inconvenience, it is not shown.

The amount of general damages to compensate a party for pain and suffering is not and cannot, in the nature of things, be determined by any definite or fixed standard. It is always left to the sound reason and discretion of the jury, under proper instruction. It is only when the amount awarded appears clearly to be out of reason and the result of passion and prejudice that the appellate court will disturb the verdict. There is nothing in the record to show that the jury was influenced by any passion or prejudice. While the general damages seem a little large for the injuries sustained, we do not feel that they are so much out of the way as to justify us in reducing the amount, thereby substituting our judgment for that of the jury and the trial court exercised in refusing a new trial on that and other grounds.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.