Mrs. Mary Louise **MILLER**, Etc., et al.,
Appellants,

v.

**ALEXANDRIA TRUCK LINES, INC.,**
et al., Appellees.

No. 17816.

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1960.

John H. Benckenstein, Beaumont, Tex., Albert P. Jones, Houston, Tex., Helm, Jones, McDermott & Pletcher, Houston, Tex., for appellant.

W. C. Harvin, George H. Jewell, Jr., George T. Barrow, Houston, Tex. (Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel), for appellees.

Before RIVES, Chief Judge, and HUTCHESON and CAMERON, Circuit Judges.

RIVES, Chief Judge.

Before daylight on the morning of March 21, 1957, there was a collision on U. S. Highway No. 90 about three miles west of Amelia in Jefferson County, Texas, between a truck and pole trailer owned by Union City Transfer and a truck and van type trailer owned by Alexandria Truck Lines, Inc. The Union City Transfer truck was being driven by B. F. Miller in an easterly direction, and the Alexandria Truck Lines, Inc. truck was being driven by Roy Windham in a westerly direction. Both drivers were killed by the collision.

The widow and minor children of each driver sued the company owning the other truck under the Texas wrongful death act.[1] Other actions arising out of the collision were brought by the truck companies for property damage and by the workmen's compensation insurance carriers for subrogation rights and were tried along with the main case. A jury verdict was returned in favor of the surviving children and widow of Roy Windham in the amount of $85,000, apportioned as follows: to the widow, $30,000; to each of the two children of the first marriage, $2,500; to each of the two children of the second marriage, $25,000. Judgment was entered upon that verdict, and the court rendered judgment also on the property damage and subrogation claims.

Both drivers having been killed, there remained no close eyewitnesses to the collision. E. E. Black, the driver of a truck which was following the Union City Transfer truck, and David Cargill, who was driving a station wagon following the Alexandria Truck Lines truck, gave testimony favoring in general the truck which each was following. Their respective views, however, were necessarily limited by angles, distances, and darkness. The other evidence as to whose fault caused the collision was necessarily a circumstantial reconstruction of the accident from such surroundings as a disabled house trailer with a red lantern on its rear off the paved portion of the highway which might have caused Miller to veer his truck suddenly to the left, the positions of the vehicles after the accident, the marks and cuts on the pavement, and the opinion testimony of the traffic officers.

At the time of his death, Windham was thirty years of age with a life expectancy of 37.74 years. He was working as a truck driver at a one dollar per hour rate of pay, or an average annual earnings of about $3,600. His funeral expenses were $1,568. No evidence was admitted concerning his character and habits, or as to any care, counsel, moral or mental training, or other services which his widow and children might reasonably have expected to receive from him if he had lived. The $85,000 awarded by the jury to Windham's widow and minor children, if invested at 4% per annum, would bring a yearly income of $3,400, or roughly equivalent to his annual earnings, without any impairment of principal, and with little or no account being taken of the part of his earnings which Windham would necessarily have spent for his own maintenance and support.

The appellants filed two notices of appeal, the first from the main judgment, and the second from the judgment denying their motion for new trial based largely on the ground of newly discovered evidence. Ray Windham, the twin brother of Roy Windham, deceased, and also a truck driver, had volunteered testimony that Roy Windham left Alexandria, Louisiana, about 1:00 a. m. and was due to have his truckload of frozen chickens at Weingarten's store in Houston, Texas, at 6:00 o'clock a. m., a distance

---

1. Article 4675, Title 77, Revised Civil Statutes of Texas 1925, Vernon's Ann. Civ.St. art. 4675:

"Actions for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all. If none of said parties commence such action within three calendar months after the death of the deceased, the executor or administrator of the deceased shall commence and prosecute the action unless requested by all of such parties not to prosecute the same. The amount recovered shall not be liable for the debts of the deceased."

Article 4677, Title 77, Revised Civil Statutes of Texas 1925, Vernon's Ann. Civ.St. art. 4677:

"The jury may give such damages as they think proportionate to the injury resulting from such death. The amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict."

of about 276 miles. The collision occurred at about 5:15 o'clock a. m. when Roy was about 82 miles from his destination. Ray further testified that, shortly after the birth of Roy's posthumous son, his widow began living in open adultery with a married man who had a family of his own. The appellees offered no evidence on the motion for new trial.

■ The evidence as to whose fault caused the collision was clearly for the jury's determination. Besides insisting upon alleged insufficiency of the evidence, the appellants complain: (1) that certain evidence was erroneously excluded at the trial; (2) that the damages are excessive; and (3) that appellants' motion for new trial on the ground of newly discovered evidence was erroneously denied. We hold with the appellants on (1), and it thus becomes unnecessary for us to rule on (2) and (3).

■ The damages recoverable under the Texas wrongful death statute are compensatory and, like those under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., are to be estimated on the present value of anticipated benefits, such, for example, in the case of minor children, as the reasonable value of the support, nurture, care, education, and advice which they would have received from the parent had he lived.[2]

Roy Windham's first marriage had ended in divorce; his first wife had remarried, and her second husband had, with Windham's consent, adopted the two minor children of the first marriage. No evidence was offered to show that Windham had made any contributions to the support of those children, though his surviving wife testified on cross-examination by appellants' counsel that one time after their marriage, but before the children were adopted, Windham contributed to their support. There was no evidence as to the amount of that one contribution. The guardian ad litem for the two children of the first marriage urged in argument to the jury that they "have certainly sustained a pecuniary loss on account of the death of their natural father." The jury apportioned to each of the children of the first marriage the sum of $2,500.

At the trial, appellants attempted to introduce into evidence records of convictions of Roy Windham in 1946, 1950, 1951 and 1952 for desertion and nonsupport of his first wife and their two children, but the district court ruled that this evidence was not admissible. Appellants contend that the evidence was relevant on two separate theories: first, that it tended to prove that Roy Windham would not have contributed to the support of the children of his first marriage; and, second, that it was proper for the jury's consideration as to the amount of support which the children of the second marriage would have received from Windham. Appellees contend that the evidence was irrelevant and too remote, since it was conceded that the children of Windham's first marriage had been adopted by another man and that Windham was not supporting them; that the prejudical potentialities of the evidence far outweighed any probative value it may have had.

■ If their mother and adoptive father did not adequately support them, the children of the first marriage still had a right to look to Roy Windham for support. They had a right also to care, counsel and advice from him. They were, therefore, proper parties to this action for Windham's death. Barnard v. Dallas Railway & Terminal Co., D.C.N.D. Tex.1945, 63 F.Supp. 344; see also, Annotation 67 A.L.R.2d 745. The value of the rights of the children of the first marriage was the subject of proof, and the appellants had the right to introduce evidence tending to show that such rights were of little or no actual value.

■ The district court exercises a wide discretion in ruling upon questions

---

2. 33 Tex.Jur., Secs. 23, 90, 91, pp. 38, 39, 133–136.

of remoteness of evidence.[3] In the present case, for example, we cannot say that the district court's discretion was abused in refusing to admit evidence of Windham's conviction for a larceny which occurred in 1948, nearly ten years before his death. On the other hand, his repeated convictions for desertion and nonsupport of the children of the first marriage are directly relevant, material and admissible as relating to and affecting the amount of the pecuniary loss, if any, suffered by those children because of Windham's death. In an action by minor children for the wrongful death of their father, the Texas Court of Civil Appeals has said:

> "The testimony of the witness Eliza Sadberry to the effect that the deceased had abandoned plaintiffs some time prior to his death was admissible as evidence upon the quantum of damages sustained by plaintiffs by reason of his death, and it was error to exclude it."

Beaumont Traction Co. v. Dilworth, Tex.Civ.App.1906, 94 S.W. 352, 357. See also, Austin Gaslight Co. v. Anderson, Tex.Civ.App.1924, 262 S.W. 136, 139; 33 Tex.Jur., Personal Injuries, etc., § 117, p. 194; compare Teeters v. Pennsylvania R. Co., D.C.W.D.Pa.1954, 118 F.Supp. 385, 387. Evidence of Windham's convictions for desertion and nonsupport can be held too remote only upon the supposition that the rights of the children of the first marriage were of no actual pecuniary value, and that supposition is not warranted in the absence of proof. Further, once such evidence has been admitted, we think that it is open for the jury to consider whether it affects the amount of support, counsel and advice which the children of the second marriage would probably have received from Windham had he lived.

■ The guardian ad litem for the children of the first marriage urges upon us that in view of the small amount apportioned to each of such children—

$2,500, we should hold the exclusion of such evidence harmless under Rule 61, Federal Rules of Civil Procedure, 28 U.S. C.A. Even under present day standards, however, that amount is not nominal, and we cannot hold the error harmless.

■ Counsel for the widow and for the children of Windham's second marriage insist that, in any event, the judgment should be reversed only as to the children of the first marriage. The Texas wrongful death statute, however, provides for but one action "for the benefit of all." Art. 4675, R.C.S. of Texas, 1925, quoted in footnote 1, supra. In 33 Tex.Jur., Personal Injuries, etc., § 142, pp. 233, 234, it is said:

> "Since all the beneficiaries of a cause of action for wrongful death are required to be joined in one suit, and the issue of negligence vel non in the suit is a single one applicable to all the beneficiary plaintiffs jointly and not singly, it follows that but one judgment can be entered. The entire award of the jury, and not the amount apportioned to each beneficiary, is the 'matter in controversy' in determining the jurisdiction of an appellate court. And when the judgment is reversed for failure to apportion any of the recovery to one of the beneficiaries, the error necessitates a reversal of the entire judgment and a remanding of the cause for another trial."

Under the circumstances of this case, and the close questions presented by the motion for new trial on the grounds of excessiveness of damages and newly discovered evidence, even if the question were entirely procedural and governed by federal law, we think that the ends of justice would best be served by reversing the entire judgment and remanding the cause for a new trial. See 28 U.S.C.A. § 2106. Constitution Publishing Co. v. Dale, 5 Cir., 1947, 164 F.2d 210, 213. It is so ordered.

Reversed and remanded.

---

**3.** Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 1936, 85 F.2d 187, 193; Dow v. Carnegie-Illinois Steel Corporation, 3 Cir., 1947, 165 F.2d 777, 780.