442 P.2d 864

**Effie L. KEMP, Administratrix of the Estate of William T. Kemp, Deceased, Appellant,**

**v.**

**PINAL COUNTY, a political subdivision of the State of Arizona, Appellee.**

**2 CA–CIV 500.**

Court of Appeals of Arizona.

July 2, 1968.

Rehearing Denied Aug. 26, 1968.

Review Denied Oct. 8, 1968.

Charles M. Wilmer and Mark Wilmer, Phoenix, for appellant.

Jack M. Anderson and Cecil A. Edwards, Phoenix, for appellee.

MOLLOY, Judge.

In this case, we are required to determine whether the trial judge properly admitted certain evidence under the Uniform Business Records as Evidence Act.[1]

Plaintiff, appellant here, seeks damages for wrongful death. Plaintiff's decedent was killed in a single car accident at the dead-end of a "T" intersection of two public highways in Pinal County which occurred at about 4 o'clock in the morning of February 6, 1965. Plaintiff presented evidence that there were no adequate signs or other warnings of the intersection and of the ending of the highway on which decedent had been traveling. One of the principal issues at the jury trial was whether decedent was exercising proper care for his own protection at the time of the accident.

At the trial, and over the strongly urged objection of plaintiff, documentary evidence purporting to be the numerical result of a blood alcohol test performed on decedent was offered by defendant and admitted by the court. This evidence consisted chiefly of an "addendum" to an autopsy report, and a black record book. A great deal of

1. Arizona has adopted the Uniform Act both by statute, A.R.S. § 12–2262, and by court rule, Rule 44(q), Rules of Civil Procedure, 16 A.R.S.

testimony was taken concerning these items, and it is necessary to review it in some detail.

An autopsy was performed upon decedent by the county autopsy surgeon, either on the day of the accident or the next day, February 7, 1965. The original autopsy report rendered by the autopsy surgeon made no mention of any blood alcohol test. Plaintiff commenced this suit on March 12, 1965. On April 7, 1965, the autopsy surgeon rendered an "addendum" to his original autopsy report which indicated that the deceased had a blood alcohol count of 0.28 grams per 100 milliliters of blood volume.

The autopsy surgeon did not perform the blood test. The technician who supposedly did so testified that he had no independent recollection of making the test or the results thereof. Though the technician first testified that the results of this examination were recorded in a "black book" at the time the test was made, it was subsequently established beyond a doubt that this was not so. Subsequent testimony of the technician included an admission that the entries had not been made as previously testified.

The secretary who made this particular test result entry in the "black book" testified that she began work in the testing laboratory in the middle of March, 1965, and that sometime soon after she began work ("I imagine it was April"), she was assigned the task of establishing a book record of "blood alcohols" from old records. Though there was testimony that there was an original record made of such tests from which entries in the "black book" could be made, in addition to autopsy reports, no such original record could be found for the test performed on plaintiff's decedent. The secretary testified that she had made this particular entry from the autopsy report dated February 7, 1965, but, when it was called to her attention that this original autopsy report made no mention of a blood alcohol test, she then testified that she "must have" made her entry in the black book from the addendum of April 7, 1965, to the autopsy report.

The source of information used by the autopsy surgeon in placing this figure in his "addendum" autopsy is confusing and uncertain. This doctor first testified that the information on the autopsy report was taken by his secretary from the "black book" which was in existence in February of 1965, and that this book was a business record regularly maintained in his office at that time. However, this same doctor subsequently admitted that this book did not exist at the time of this report.

The black book itself carries no badge of authenticity. The first eighteen pages of the original record book have been excised for reasons unexplained in the record. The first three and one-half pages of the existing entries are entirely uniform in appearance; the last such uniform entry was entered on June 12, 1965.

The Uniform Business Records as Evidence Act, as adopted in Arizona and as set forth in Rule 44(q) of the Rules of Civil Procedure, reads as follows:

"1. The term 'business' includes every kind of business, profession, occupation, calling or operation of institutions, whether or not carried on for profit.

"2. Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The Uniform Act, like its substantially identical federal counterpart, the Federal Business Records Act, 28 U.S.C.A. § 1732, was enacted as an exception to the general rule excluding hearsay evidence to liberalize the rules of admitting records into evidence. Lenslite Co. v. Zocher, 95 Ariz. 208, 216, 388 P.2d 421, 426 (1964). The courts have

generally construed this liberalizing legislation in accordance with its purpose and have avoided interpreting it " * * * in a dryly technical way, contrary to ordinary habits and customs * * *." Korte v. New York, N. H. & H. R. Co., 191 F.2d 86, 91 (2d Cir. 1951); Harris v. Smith, 372 F.2d 806, 816 (8th Cir. 1967). But the liberal interpretation to be accorded this legislation " * * * does not mean that any particular business record may be admitted without careful scrutiny of its reliability for the purpose for which it is offered as evidence." Bowman v. Kaufman, 387 F.2d 582, 587 (2d Cir. 1967).

■ Records made by governmental agencies can be business records within the meaning of these statutes. United States v. Ware, 247 F.2d 698 (7th Cir. 1957); Moran v. Pittsburgh-Des Moines Steel Co., 183 F. 2d 467 (3d Cir. 1950). The results of blood alcohol tests generally are admissible if they meet the statutory requirements of admissibility. Thomas v. Hogan, 308 F.2d 355 (4th Cir., sitting en banc, 1962), and cases noted therein.

■ In order to be admissible under the Uniform Act, a business record must be " * * * made in the regular course of business, *at or near the time of the act,* condition or event * * *" (emphasis ours). The time limitations of the requirement of contemporaneous or near-contemporaneous entry are necessarily flexible rather than arbitrary and depend upon the nature of the material recorded and other factors involved in the particular case. Lenslite Co. v. Zocher, supra; Missouri Pacific R. Co. v. Austin, 292 F.2d 415, 422–423 (5th Cir. 1961); and see Green, The Model and Uniform Statutes Relating to Business Entries as Evidence, 31 Tulane L.Rev. 49, 60 (1956); McCormick, Handbook of the Law of Evidence § 285, at 601 (1954). Thus, in the *Lenslite* case, time cards prepared one to seven days after the event were held to be sufficiently contemporaneous to be admitted as business records. And in Croll v. John Hancock Mut. Life Ins. Co., 198 F.2d 562, 565 (3d Cir.

1952), a physician's office records were admissible notwithstanding that he may have delayed for as long as two weeks in transcribing his notes from daily records to office records.

■ On the record before us, however, we must infer a minimum lapse of some fifty-nine days between the time the test results were known and the entry of such results on the proffered records. According to one portion of the technician's testimony, he at times performed approximately one hundred similar tests in an average month. The record made is only a figure which could easily be transposed or otherwise confused. We have found no authority which sustains admissibility of any similar type of entry after a lapse of some two months after the act. Where, as here, the proffered entry is one of many numerical test results, we think that judicial experience, business practice, and the discipline of chemistry must reach a united conclusion that a fifty-nine-day lapse between act and entry is too long a time.

■ While, in a marginal case, the record is admissible and the weight to be accorded to it becomes a question for the jury, where the time of entry is clearly beyond the limits of near-contemporaneity, the record is inadmissible. Metropolitan Protection Service, Inc. v. Tanner, 182 Neb. 507, 155 N.W.2d 803 (1968); Adams v. New Jersey State Fair, 71 N.J.Super. 528, 177 A.2d 486 (1962); and compare generally Thomas v. Hogan, 308 F.2d 355 (4th Cir. 1962).

■ We need not, however, rest our holding on lack of contemporaneity alone. With regard to the black book, we find lacking here the established routine from which a "regular course of business" can be found. Each record offered must stand on its own attributes, and copies or summaries of antecedent records are inadmissible unless prepared in accordance with the specified requirements of the Uniform Act. Bolling Co. v. Barrington Co., 398 S.W.2d 28 (Mo.App.1965). The fact that the records were prepared after commencement

of litigation by persons with whom defendant had regular business dealings is of some significance. Compare Kincaid & King Constr. Co. v. United States, 333 F.2d 561 (9th Cir. 1964). Notwithstanding the wide discretion vested in the trial court to rule on the admissibility of business records, Builders Supply Corp. v. Shipley, 86 Ariz. 153, 157, 341 P.2d 940, 942–943 (1959), we do not think that, in view of all of the circumstances here, these records could reasonably satisfy the general requirement of the Uniform Act that " * * * the sources of information, method and time of preparation were such as to justify its admission." We hold that the records offered to show the result of the test were inadmissible.

■ Appellee makes the contention that, since there was other evidence of decedent having consumed alcohol prior to his fatal accident, the admission of the test results was not prejudicial error requiring reversal. We cannot agree. The autopsy surgeon testified that, based upon the amount of alcohol in the blood, indicated by the figures in the entries, the decedent would have been in a "stuporous" condition. His testimony alone gave the figures a qualitative significance which we cannot regard as being without prejudice.

Since the case must be retried, we will remark briefly on appellant's further contention that the trial court erred in permitting the chief of police of the City of Phoenix to testify that he discharged the decedent from the Phoenix police force "at 8:17 P.M. April 15, 1960."

■ Evidence of the decedent's capacity and disposition to earn money is pertinent to the issue of damages in a wrongful death action. 22 Am.Jur.2d Death § 152, at 717–718; 25A C.J.S. Death § 123, at 1020 et seq. And since the surviving parties may recover for the loss of decedent's companionship, comfort, and guidance, Boies v. Cole, 99 Ariz. 198, 203, 407 P.2d 917, 920 (1965), decedent's character in this regard in relationship to the surviving parties is a matter in issue.

■ Where character is in issue, as in a wrongful death action, evidence of specific acts of the decedent bearing directly upon the trait at issue is admissible. 1 Wigmore, Evidence § 210(a) at 709 (3d ed. 1940); McCormick, Handbook of the Law of Evidence § 154, at 323–324 (1954); and see Wimberly v. City of Paterson, 75 N.J. Super. 584, 183 A.2d 691, 705–706 (1962), certification denied 38 N.J. 840, 184 A.2d 652 (1962), and Annot., 99 A.L.R.2d 972, et seq.

■ As to any particular act or acts, controlling considerations include, besides relevancy, the tendency of the evidence offered to give rise to confusing collateral issues. The trial court has a measure of discretion in the matter. Miller v. Alexandria Truck Lines, Inc., 273 F.2d 897, 900–901, 79 A.L.R.2d 812, 818 (5th Cir. 1960), rehearing denied and corrected, 274 F.2d 942. Here, we are not concerned directly with a specific act of the decedent, but with the act of a third party involving decedent. The trial judge excluded all evidence of the circumstances surrounding decedent's discharge from the Phoenix police force. Based upon the above considerations, the trial court might properly have made that ruling. Having so ruled, we think that the testimony of the unexplained discharge five years previous was remote and prejudicial in raising speculative collateral issues.

Judgment reversed and remanded for new trial.

HATHAWAY, C. J., and KRUCKER, J., concur.