540 P.2d 690

**Donald W. SIEGRIST, Administrator of the Estate of Richard Siegrist, Deceased, and Guardian of the person and Estate of Teresa Michelle Siegrist, a minor, Appellant,**

**v.**

**Jose CARRILLO and Jessie Carrillo, his wife, Appellees.**

**No. 12014.**

Supreme Court of Arizona, In Division.

Oct. 2, 1975.

Filler, Paytas, Shannon, Fleming & Stephenson by Charles A. Filler, and Tanner, Jarvis, Owens & Hoyt, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Hunsaker and John H. Westover, Phoenix, for appellees.

NELSON, Presiding Judge, Court of Appeals, Department C.

This appeal is based upon an action for wrongful death and property damage resulting from a motorcycle-truck collision. The action in the trial court was brought by Donald W. Siegrist as Guardian of the minor, Teresa Michelle Siegrist, for the wrongful death of her parents, Richard and Patricia Siegrist. A jury verdict was rendered in favor of defendants Jose and Jessie Carrillo, his wife. Judgment was entered in accordance with the verdict and plaintiff's motion for a new trial was denied. This appeal followed. We affirm.

On March 28, 1969, Richard and Patricia Ann Siegrist were riding their 1968 Harley-Davidson motorcycle, traveling westbound on Buckeye Road (U.S. Highway 80) when a collision occurred between the motorcycle and a 1967 Chevrolet pickup truck being driven by Jose Carrillo. The accident occurred at or near the intersection of U. S. Highway 80 and 91st Avenue. The Chevrolet truck was eastbound on U. S. Highway 80 and was making a lefthand turn, Carrillo intending to travel north on 91st Avenue. As a result of this collision,

Richard and Patricia Siegrist were killed. At the time of the accident, the Siegrists were en route to a motorcycle meet in Yuma, and were traveling with a group of friends.

The evidence showed that on the day of the accident Richard Siegrist left work early and arrived at the home of his friend, Robert Snyder, at about 2:00 p. m. There he had a beer, followed by a nap lasting until around 5:00 p. m. Patricia Ann Siegrist met him at Snyder's house at about 5:00 p. m. that day. The Siegrists, along with Allen Waddell, Snyder and Snyder's girl friend consumed one beer at Snyder's before leaving for Yuma. After leaving Snyder's home the Siegrists and their friends traveled on their motorcycles to a tavern located on Buckeye Road at about 75th Avenue, arriving around 5:30 or .6:00 p. m. While there was inconsistency in the testimony as to the exact time of arrival, the group remained at the tavern more than an hour, the accident having occurred at approximately 7:25 p. m. The testimony established that each person had at least three beers and perhaps more.

Evidence was adduced at trial to the effect that the Siegrist motorcycle was traveling at an excessive rate of speed at the time of the accident. There was also testimony tending to indicate that the headlight of the motorcycle was not on, although it was after dark. Allen Waddell, traveling in the Siegrist party, testified that he never saw the brake light on the decedents' motorcycle. An investigating officer testified that the impact was so great that the frame of the pickup truck had been bent. Other expert testimony indicated that, judging from the damage to the vehicle and the physical markings at the scene of the accident, the motorcycle was traveling at a speed of approximately 60 miles an hour or faster. Testimony was also admitted which supported the conclusion that had the driver of the motorcycle been traveling at 50 miles per hour, average reaction time would have allowed him to stop short of collision.

After the accident the decedents' bodies were removed to the county morgue to have the customary blood specimens extracted. The medical examiner who took the blood, Dr. Nicholas Grenfell, was deceased at the time of the trial. Alice E. Niles, a chemist with the office of the Maricopa County Medical Examiner, who had performed over 1,500 blood tests per year over a six-year period, including the tests on the blood in question, and who was well-acquainted with the customs and procedures followed by Dr. Grenfell, testified. Over objection, she was allowed to testify as to the results of tests she performed upon the samples of blood taken from the bodies of Richard and Patricia Siegrist.

Three questions are presented for review on this appeal. The primary issue is whether the court erred in permitting the oral testimony of Alice Niles concerning the blood alcohol levels of the Siegrists. A second issue presented for review is whether the court erred in permitting the testimony of one Josie or Jossie Barraza, whose name was allegedly not given to plaintiff at least two days prior to trial. Finally, the appellants contend that the verdict and judgment are not justified by the evidence and are contrary to law. One other question was presented in the briefs, but abandoned in oral argument and will not be further considered here.

As to the first question, the appellants contend that there was absolutely no direct testimony as to the circumstances surrounding the taking of the blood specimens and that there was no testimony establishing a chain of custody from the taking of the blood until its analysis some 64 to 72 hours later. It is also pointed out that no preservatives were put into the specimens between the time they were obtained and delivered to the chemist for analysis. Such preservatives are now added to prevent the growth of bacteria in the blood which precludes the increase in the alcohol level. Pursuant to the prevailing custom, the samples were kept for some three months, after which they were destroyed.

Consequently the specimens themselves were not available at trial.

In addition to the testimony of the chemist, Alice Niles, Exhibits 38 and 39, consisting of the documents pertinent to the toxicological examination and analysis in question, were offered into evidence by the appellees. The documents themselves were not admitted, but were made available to the chemist to refresh her memory. She then testified orally to the results of the blood tests that she had performed. She also testified as to the customs and procedures utilized in the handling of blood specimens taken during her six years of experience. It was the practice of Dr. Grenfell to extract blood from the decedent's heart and place it in a container with a screw cap lid and mark it for identification. The blood specimens would then be placed in a refrigerator and kept there until picked up by Mr. Mansfield to be transported to the laboratory. There was no evidence that this procedure was deviated from in this case.

■ The court allowed the testimony, opining that any inadequacy of foundation for the blood test went to the weight to be accorded the evidence rather than to its admissibility. We agree.

There is no question as to Alice Niles' competence as a chemist. There is no contention as to the results of the tests she performed. The only question is whether she performed those tests on blood samples drawn from the bodies of the Siegrists. In that context she testified exactly how the system had operated for six years—how Dr. Grenfell took the blood, where it went next, and how it got to the laboratory where she analyzed it. While she obviously did not observe all of the steps in this case, no one seriously questioned the accuracy of her general description of the procedures, nor did they offer any evidence to the contrary.

The decision in *Kemp v. Pinal County,* 8 Ariz.App. 41, 442 P.2d 864 (1968), has been cited to the Court. The case does not, however, resolve the question here in issue. The technician who performed the blood test in *Kemp* had no independent recollection of making the test or of its results. In addition, he erroneously testified that the results of the blood tests had been recorded in a record book at the time they were made when it turned out that the results were actually not recorded until at least 59 days later. The court properly concluded that the entry in the book was not sufficiently contemporaneous to the testing of the blood to allow the record to be admitted as a "Business Record." Rule 44, Rules of Civil Procedure, 16 A.R.S.

In this case, no record was admitted. Niles testified directly, after having her memory recalled by a review of the records. In any event, we believe that the Illinois court's analysis of the problem is sound, whether it involves simple testimony or documentary evidence, or both:

"In our opinion, in a civil case, the foundation laid for introduction of evidence of a blood analysis need not preclude every possibility of a doubt as to the identity of the specimen or the possibility of a change of condition in the blood. If the routine and procedures of a laboratory are shown by the evidence as having been commonly accepted by the medical profession, and the business of the laboratory is the securing, handling and analysis of blood specimens, amongst other types of specimens, those routines and procedures ought to be acceptable to the courts." *Woolley v. Hafner's Wagon Wheel, Inc.,* 22 Ill.2d 413, 418, 176 N.E.2d 757, 760 (1961).

*See also State v. Fornier,* 103 N.H. 152, 167 A.2d 56 (1961); *Wagner v. Osborn,* 225 Cal.App.2d 36, 37 Cal.Rptr. 27 (1964).

■ Even if there had been error in admitting the testimony of the chemist, it would not have been prejudicial since there is ample additional evidence supporting a conclusion that the Siegrists were under the influence of alcohol when the accident occurred. Arizona Constitution, Art. 6, §

27, 1 A.R.S.; *State v. Stone*, 104 Ariz. 339, 452 P.2d 513 (1969); *Bonine v. Bonine*, 90 Ariz. 319, 367 P.2d 664 (1961). *See also Benner v. B. F. Goodrich Company*, 150 Mont. 97, 430 P.2d 648 (1967), in which blood test results were held inadmissible but there was ample additional testimony of drinking to support the jury's conclusion.

The second issue for consideration is whether the trial court erred in permitting the testimony of one Josie or Jossie Barraza. The pretrial statement was submitted to the trial court on or about July 22, 1971. On Saturday, February 24, 1973, counsel for the defendant discovered that a typographical error had been made on the pretrial statement—Josie or Jossie (Carrillo) Barraza was listed as Jessie Carrillo. The matter was immediately brought to the court's attention and the court informed the plaintiff's counsel that he would have an opportunity to question the witness prior to trial if he so desired. Her testimony was given on March 1, 1973. Counsel for the defendants-appellees did not know that Jossie Carrillo had remarried and assumed the name of Barraza.

■ The typographical error in this instance was inadvertent. The assertion by the appellant that Rule 16(c)(1) of the Uniform Rules of Practice, 17A A.R.S., requires that Mrs. Barraza's testimony be excluded cannot be accepted by this Court. Rule 16(c) of the Uniform Rules of Practice, *supra,* states that "no other exhibits or witnesses shall be used during trial other than those listed and exchanged, except for good cause shown." The appellees maintain that "good cause was shown" in the instant case. The trial court agreed and so do we. Mrs. Barraza's correct name was given to plaintiff's counsel three days before the day of trial, thus within the two-day limitation as set by the trial court in its discretion. While it is true that Rule 6 of the Rules of Civil Procedure, 16 A.R.S., states that Saturdays and Sundays will not be counted when the time to be computed is less than 10 days, the trial court may enlarge the original time without motion or notice, or permit the act to be done where the failure to act is the result of "excusable neglect." We find no abuse of discretion on the part of the trial court in allowing the pretrial statement modification and resultant testimony. *See Plonkey v. Superior Court*, 106 Ariz. 310, 475 P.2d 492 (1970).

■■ The final contention here is that the evidence does not support the verdict and judgment entered thereon. Our role in this regard is a limited one—to determine whether there is substantial evidence to support the judgment. *State ex rel. Herman v. Schaffer*, 110 Ariz. 91, 515 P. 2d 593 (1973). Where the facts are in dispute, we will not disturb the jury's verdict unless clearly erroneous and without substantial evidentiary support. *Parrish v. Camphuysen*, 107 Ariz. 343, 488 P.2d 657 (1971).

■ The evidence supports any one of three possible findings: (1) The Siegrists were under the influence of alcohol at the time of the accident. (2) The motorcycle upon which they were riding was being operated without its light on during darkness. (3) The motorcycle was being operated at an excessive speed. From any such finding or combination thereof, the jury could have concluded that the conduct of the Siegrists was either the sole cause of the accident, or a contributing cause. The verdict and judgment are supported by sustantial evidence and are not contrary to law.

The verdict of the jury and the judgment of the trial court entered thereon are affirmed.

HAYS and HOLOHAN, JJ., concur.

Note: STRUCKMEYER, V. C. J., did not participate in the determination of this matter; NELSON, P. J., Department C, Court of Appeals, sat in his stead.