619 P.2d 729

John McFARLIN, a single man,
Appellee,

v.

Clarence E. HALL and Joan Hall, dba
The Horseman's Lounge, Appellants.

No. 14868–PR.

Supreme Court of Arizona,
In Banc.

Oct. 14, 1980.

Rehearing Denied Nov. 18, 1980.

Udall, Shumway, Blackhurst, Allen, Bentley & Lyons by John H. Lyons, F. Timothy Hoyt, Jr., Mesa, for appellants.

Hofmann, Salcito & Stevens by Daniel R. Salcito, James W. Evans, Phoenix, for appellee.

STRUCKMEYER, Chief Justice.

Appellee, John McFarlin, initiated this action against Clarence and Joan Hall, owners of the Horseman's Lounge, after he was shot in the bar's parking lot by Frank Dominquez, another patron of the bar. After a trial in Maricopa County Superior Court the jury returned a verdict for $85,000.00 in favor of McFarlin. The Halls moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied this motion and defendants appealed. The Court of Appeals reversed in a memorandum decision. This Court granted a petition for review, see Rule 23, Rules of Civil Appellate Procedure, 17A A.R.S. Memorandum decision of the Court of Appeals vacated and judgment of the trial court affirmed.

Appellee predicated his action on the holding in *Pierce v. Lopez*, 16 Ariz.App. 54, 490 P.2d 1182 (1971). There, a duty was imposed on tavern owners to exercise reasonable care and vigilance to protect their invitees from injury.

The appellants first argue that the trial court erred in failing to direct a verdict for them and for denying their motion for judgment notwithstanding the verdict for the reason the appellee did not as a matter of law establish a prima facie case. It is their position that the necessary element of foreseeability to establish a negligence case is totally lacking in that there is no evidence which would permit a jury to find that the appellants knew or should have known that Dominquez would shoot McFarlin, or that there is any evidence whatsoever which shows an awareness by appellants of any violent propensity on the part of Dominquez.

We do not agree with appellants that the jury was required to find the Halls should have been aware of the probability of Dominquez using a gun to injure McFarlin. It is sufficient if the jury could have found on the evidence that a reasonable person would have foreseen that the condition or presence of Dominquez on the premises posed a threat of physical harm to the patrons or employees of the bar and would have taken action to prevent such harm. *Pierce v. Lopez*, supra at 57–58, 490 P.2d 1182. The foreseeability of the extent of actual injury or the manner in which it was inflicted is immaterial. Harper and James, The Law of Torts, § 18.2, p. 1026, § 20.5(6), p. 1147; Restatement (Second) of Torts, § 281, comment f; *cf. Parsons v. Smithey*, 109 Ariz. 49, 53–54, 504 P.2d 1272 (1973). This is not inconsistent with the principle announced in *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), and accepted as the law of this state in *West v. Cruz*, 75 Ariz. 13, 19, 251 P.2d 311 (1952). The *Palsgraf* principle requires that liability be imposed only where both the plaintiff and the risk are foreseeable to a reasonable person. The holding here is that a broad view must be taken of the class of risks and victims that are foreseeable. *See* Harper and James, supra at 1147, n. 43; Restatement (Second) of Torts § 281, comment g; *Tucker v. Collar*, 79 Ariz. 141, 285 P.2d 178 (1955).

The evidence of liability at the trial consisted almost entirely of the testimony of appellant Clarence Hall on cross–examination and testimony of statements made by appellants after the shooting. While a marked difference existed between Clarence Hall's testimony and statements attributed to the appellants, the evidence was clear that Frank Dominquez, the man who shot the appellee, had in the late 1960's been a frequent customer of the Halls' bar,

but that two or three years prior to the shooting Dominquez stopped coming there. A few weeks before the assault, he reappeared at the lounge.

Numerous witnesses at the trial related statements made by Clarence Hall after the shooting. Hall was quoted as describing Dominquez as a "troublemaker." To one policeman, Hall not only described Dominquez as a "troublemaker," but also as "crazy." To another policeman, Hall said that Dominquez "had caused trouble and gotten into fights at the bar" before his disappearance. There was also testimony that Hall had stated that he had "86'd" Dominquez. While Hall said in his testimony that by this he meant that a customer is asked to leave for the evening, there was also evidence that this is a trade term for permanent expulsion, used only in serious situations. Hall admitted in his testimony that he told the police that Dominquez would argue with other customers, and that he might have used the word "troublemaker" to describe Dominquez. However, he denied that Dominquez ever showed any tendency for physical violence. Hall contended that his usage of "troublemaker" and "fights" referred to Dominquez's persistent pestering of female customers to dance with him, even when these female customers refused or were accompanied by their boyfriends or husbands.

Witnesses testified that Joan Hall said she feared Dominquez because "of a look in his eyes." She told the appellee's stepfather that she and her husband were both "deathly afraid" of Dominquez and "that she just felt that something was going to happen but that they were afraid of" Dominquez. Another witness testified that Mrs. Hall said "of all the people that have come into their place over the years, there were only two she was really afraid of and Dominquez was one of them."

Both appellants told people that they believed that Dominquez had spent the prior two to three years in jail or in an institution for the mentally ill, and that they believed that Dominquez had been arrested for drunk and disorderly conduct numerous times in the past. Witnesses also quoted the Halls as saying that they "knew they shouldn't have let him back into the place."

The parties hotly disputed Dominquez's condition on the night of the shooting. Clarence Hall admitted that he had to ask Dominquez to quit pestering some female customers for a dance, but he denied that Dominquez was intoxicated when Hall left the bar near midnight, one hour before the shooting. Clarence Hall testified that as he left the bar, he told Dominquez "to be good." On the other hand, a policeman reported that Hall admitted to him that Dominquez was intoxicated when Hall left the bar. Another witness testified that Hall told her that he had been hesitant in letting Dominquez stay at the bar that night, but that since Dominquez was very calm and was not causing any trouble, he saw no reason to ask Dominquez to leave.

Eyewitnesses other than Hall were nearly unanimous that Dominquez was intoxicated that evening. A bartender told the jury that she made Dominquez a weak drink because she was not sure of his condition. She said that his speech was slurred and that he was walking "a little uneasy." A member of the band in which the appellee was also playing that night, reported that he observed Dominquez from one or two feet away at around one o'clock in the morning and Dominquez was "staggering drunk."

The policeman who apprehended Dominquez shortly after the shooting also said that Dominquez was intoxicated. The officer based this opinion on Dominquez's erratic driving, slurred speech and slow eye reaction to light, compounded by a strong odor of alcohol. According to this same officer, Dominquez violently resisted arrest and had to be physically subdued.

One witness, a barmaid, testified that Dominquez was not slurring his speech or staggering in his walk. Yet this same witness testified that Dominquez followed her around for some time trying to convince her to go on a date with him after the bar closed, all the while insisting that they had dated previously when, according to the

barmaid, they had not. While she testified later that Dominquez annoyed her more than made her afraid, the barmaid admitted that she asked a member of the band to act as her "brother" if Dominquez began again to pressure her for a date.

Taking this evidence as true and all reasonable inferences therefrom, the jury could have found that the Halls thought Dominquez had spent his most recent years in jail or a mental hospital, or both; that Dominquez had, at least in the past, shown a habit of fighting with other customers of the bar; that Dominquez had proven to be such a troublemaker that Hall permanently expelled Dominquez from the premises; and that Dominquez's overall personality and conduct caused the Halls to fear him and lead them to believe that they could not control him. The jury further could have found that the Halls or their employees allowed Dominquez to become intoxicated and remain on the premises, even after Dominquez evidenced a return to his past course of conduct by pestering female customers, and that they knew or should have known that intoxication could result in the exaggeration of Dominquez's undesirable conduct.

■ To establish negligence, the plaintiff only needs to present facts from which negligence can be reasonably inferred. *E. L. Jones Construction Co. v. Noland*, 105 Ariz. 446, 453, 466 P.2d 740 (1970). An appellate court must view the evidence in the light most favorable to the prevailing party and give that party all the reasonable inferences arising from that favorable view of the evidence. *E. L. Jones Construction Co. v. Noland*, supra; *Bullard v. Stonebraker*, 101 Ariz. 584, 422 P.2d 700 (1967). A judgment will be affirmed based on a jury verdict if substantial evidence is found to support the verdict. *Siegrist v. Carrillo*, 112 Ariz. 218, 222, 540 P.2d 690 (1975). There was sufficient evidence, if believed by the jury, to support a finding that the defendants or their employees were negligent in allowing Dominquez to become intoxicated or remain on the premises while intoxicated without taking appropriate steps to protect or warn patrons and employees of the lounge when they knew or should have known that Dominquez posed a risk of physical harm to those patrons and employees. *See Vigil v. Pine*, 176 Colo. 384, 490 P.2d 934 (1971); *Carey v. New Yorker of Worcester, Inc.*, 355 Mass. 450, 245 N.E.2d 420 (1969); *Reilly v. 180 Club, Inc.*, 14 N.J.Super. 420, 82 A.2d 210 (1951); *Waldron v. Hammond*, 71 Wash.2d 361, 428 P.2d 589 (1967).

■ The appellants point to the facts that on the night of the assault Dominquez had not been overtly violent or hostile in the bar and that no contact occurred between Dominquez and the appellee before the shooting. In this regard, appellants urge that liability could only be found if there was a disturbance giving notice to the appellants of the impending danger, and then only if there were some relationship between that disturbance and the violence causing the injury to the appellee. Appellants rely on *Fisher v. Robbins*, 78 Wyo. 50, 319 P.2d 116 (1957), a case cited in *Pierce v. Lopez*, supra. Although *Fisher v. Robbins* is cited in *Pierce v. Lopez*, and although *Fisher* supports appellants' position, the law as stated in *Pierce* imposes a greater duty on bar owners than *Fisher* would. *Pierce* requires owners to take steps to protect patrons of their taverns when the bar owner has reason to know, *from what has been observed or from past experience*, that one patron poses a threat of harm to others. 16 Ariz.App. at 58, 490 P.2d 1182. Here, liability was premised on the fact that appellants allowed Dominquez to remain on the premises while intoxicated when they knew or should have known, from past experience, that he had a propensity for violence. *Compare Fisher v. Robbins*, supra, *with Waldron v. Hammond*, supra, cited in *Pierce v. Lopez*, supra; *see Parsons v. Smithey*, supra 109 Ariz. at 54, 504 P.2d 1272.

■ In affirming the judgment in this case, we recognize that bar owners are not insurers of their customers' safety. But when the evidence shows, as it does here, that the owners are aware that a patron has a propensity for violence and believe he

has recently been in jail or a mental hospital, there is a duty while that person remains intoxicated on the premises to take the necessary precautions to prevent violence to other invitees.

■ The defendants urge that the trial court erred in instructing the jury as to their duty to use reasonable care. The court instructed the jury verbatim from the language of an instruction approved by the Court of Appeals, in *Pierce v. Lopez*, supra 16 Ariz.App. at 57–58, 490 P.2d 1182. Among other things, the instruction told the jury that an operator of a bar, although not an insurer of the safety of his patrons, owes a duty to exercise reasonable care and vigilance to protect them from reasonably foreseeable injury. The instruction specifically stated: "The test of whether the duty of reasonable care is discharged is the probability or possibility of injury to the plaintiff." It is appellants' position that the language of the instruction permits a finding of liability based upon a mere possibility of injury.

We agree with the Supreme Court of Washington in *Waldron v. Hammond*, supra 428 P.2d at 591, where that court disapproved of the following sentence in an instruction:

"If you find from the evidence that he or his agents and employees knew or should have known the possibility of disorderly conduct, then it was his duty to exercise reasonable care * * * to protect his guests from injury from the disorderly acts of other guests."

The Washington Supreme Court said that standing alone the instruction as worded could become a source of reversible error, but reading the instruction in context with other instructions, particularly the one admonishing the jury that the defendant was not an insurer of the safety of his patrons, convinced it that the instruction was not as devastating or misleading as the defendant would have it believed, and that "at best it is but a harmless error."

■ The appellants' further complaints of error can be disposed of summarily. They first complain of the trial court's re-

fusal of two instructions taken from *Tucker v. Collar*, supra, which explained the concept that the appellants were only required to foresee the probable and were not liable for harm resulting from a "bare possibility." The instruction given by the court, taken verbatim from *Pierce v. Lopez*, supra, was sufficient to adequately cover the theory of liability except in its use of the word "possibility" and, as to this, we have already indicated that we believe the error was non–prejudicial.

■ The appellants complain of the trial court's rejection of their proposed Instruction # 5. That instruction required the jury to determine that the appellants knew or should have known of the impending danger to the appellee and that they "had a reasonable opportunity to avert" the danger. This language is inconsistent with the instruction which the court actually gave. The court instructed that in the use of due care, appellants were required to "exercise the power of control or expulsion which occupation of the premises [gave them] over the conduct of any person who may be present * * * ". *Cf. Pierce v. Lopez*, supra 16 Ariz.App. at 58, 490 P.2d 1182. By the court's instruction, it was the duty of the jury to find that appellants had the opportunity to expel Dominquez, stop serving him, or do any one of a myriad of acts which a reasonable bar owner might do to protect his patrons, when another patron poses a threat of physical harm. The appellants' proposed instruction misleadingly implies that the appellants must have had an opportunity to intervene in the subsequent violent confrontation between Dominquez and appellee. The instruction given correctly stated the law. There was no error in the trial court's refusal to give the proposed Instruction # 5.

■ The appellants complain that the facts were legally sufficient to warrant an instruction on intervening/superseding cause. They argue that it is undisputed that appellee's injuries were sustained as a result of an intentional, criminal act committed by Dominquez and that this act oc-

curred in the parking lot of appellants' establishment at a time when both appellee and Dominquez had left for the night. In urging that Dominquez's act was an intervening/superseding cause, the appellants are failing to recognize the predicate for liability; first, that the possessor of a bar must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of persons who may be present in order to prevent injury, mistreatment or annoyance to his patrons, and, second, that he must act as a reasonable man to prevent harm from negligent or intentional acts on the part of such persons. *Pierce v. Lopez*, supra at 57–58, 490 P.2d 1182. There is no question here to be resolved as to whether Dominquez's act was an intervening/superseding cause. The only question is whether the appellants acted as reasonable persons to prevent harm to appellee.

"The problem which is involved in determining whether a particular intervening force is or is not a superseding cause of the harm is in reality a problem of determining whether the intervention of the force was within the scope of the reasons imposing the duty upon the actor to refrain from negligent conduct. If the duty is designed, in part at least, to protect the other from the hazard of being harmed by the intervening force, or by the effect of the intervening force operating on the condition created by the negligent conduct, then that hazard is within the duty, and the intervening force is not a superseding cause." Restatement (Second) of Torts, § 281, comment h.

Finally the appellants complain of the failure of the trial court to grant their motion for a mistrial or their motion for a new trial based on an asserted improper opening statement by the appellee's attorney. In his opening statement, the appellee's counsel told the jurors they would be shown Dominquez's police record, "which makes it clear that Mr. Dominquez was arrested on numerous occasions for violent crimes, for crimes dealing with aggravated assault, assault with a deadly weapon,

drunk and disorderly conduct, burglary or rape, for everything else * * * and in every single one of these acts, with one or two minor exceptions, he was drunk. Drunkenness and violence with Dominquez went hand in hand. The evidence will also show that the Halls knew this."

It should be understood that appellee filed a pretrial statement, which included the fact that he would present evidence of Dominquez's police record and of reports relating to his criminal activities. No attempt was made prior to trial by appellants to preclude appellee from presenting these matters to the jury and it was not until appellee rested that appellants moved for a mistrial "for the reason that counsel has not been able to prove certain key elements of the case mentioned in his opening statement, resulting in prejudice to the defendants * * *". This motion was denied. Thereafter, appellants, apparently relying exclusively on their motion for mistrial as grounds for reversal, did not request a special admonition or cautionary instruction directing the jury to disregard that portion of appellee's opening statement which was not supported by the evidence.

We said in a criminal case in which the county attorney did not prove certain matters recited in his opening statement:

"Unless it clearly appears to the trial court that the statement was made for the purpose of prejudicing the jury, we think no reversible error is committed by a failure on the part of the state to formally withdraw matters which it has stated would be proved and on which no proof had been offered." *Rutledge v. State*, 41 Ariz. 48, 56, 15 P.2d 255 (1932).

The decision as to whether unproved statements were made in bad faith or were so prejudicial as to warrant a mistrial, in spite of proper admonitions and instructions, should rest with the trial court. That court has the whole picture and is better equipped to make such a judgment than an appellant court. This is the customary rule where there is a claim of misconduct of counsel. *Selaster v. Simmons*, 39 Ariz. 432, 439, 7 P.2d 258 (1932).

We think also that the principle to be found in *Schmerfeld v. Hendry*, 74 Ariz. 159, 245 P.2d 420 (1952), is applicable. There, an assignment of error was made based on misconduct of an attorney in his closing remarks to the jury. The court said:

> "Plaintiff made no objection to the statements at the time, which if made would have given the trial court the opportunity to instruct the jury to disregard the remarks." 74 Ariz. at 161, 245 P.2d 420.

Here, had appellants requested a cautionary instruction, the trial court could have impressed upon the jury that opening statements were not to be taken as evidence in the case. Appellants concede that appellee's counsel made his opening statement in good faith; and we cannot find, from the record, that the remarks created such a prejudicial impression on the jury that it could not have been eliminated by a cautionary instruction.

The judgment is affirmed.

HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.

GORDON, Justice (dissenting):

In my opinion the effect of the holding in this case is to expand the duty of an innkeeper far beyond the parameters of *Pierce v. Lopez*, 16 Ariz.App. 54, 490 P.2d 1182 (1971). To find that the Halls should have anticipated violent behavior on the part of Mr. Dominquez under the facts in this case is to require an innkeeper to "possess extraordinary powers of foreseeability greater than those of a reasonable person in similar circumstances." *Pierce, supra*, at 59, 490 P.2d at 1187. The holding also requires that, although there is nothing to indicate that when Dominquez left the bar he was not in fact leaving for good, the innkeeper still had a duty to patrol the parking lot of his business establishment for an indefinite period of time on the vague chance that he might return. These expansions, in my opinion, are unwarranted under the facts of this case. For these reasons, and also because I believe the opinion of the Court of Appeals in this case is well reasoned and

properly disposes of the case, I respectfully dissent.